**ARBOR HILL CONCERNED CITIZENS NEIGHBORHOOD ASSOCIATION, et al., Plaintiffs–Appellants,**

v.

**COUNTY OF ALBANY, et al., Defendants–Appellees.**

**Docket Nos. 03–9132, 03–9204.**

United States Court of Appeals, Second Circuit.

Motion: Feb. 24, 2004.

Final papers submitted March 18, 2004.

Decided: May 20, 2004.

Gibson, Dunn & Crutcher (Mitchell A. Karlan, New York, New York, DerOhannesian & DerOhannesian, Albany, New York, Lawyers' Committee for Civil Rights Under Law, Washington, DC, of counsel), for Plaintiffs–Appellants.

Michael C. Lynch, Albany County Attorney, Albany, New York, for Defendants–Appellees.

Before: NEWMAN, KEARSE, and CALABRESI, Circuit Judges.

PER CURIAM.

This motion for appellate fees primarily concerns the issue of whether such fees should be based on the prevailing hourly rate in the district where the case was tried or at the location where the reviewing court sits. Plaintiffs Arbor Hill Concerned Citizens Neighborhood Association *et al.* who, on appeal, obtained reversal of an order of the United States District Court for the Northern District of New York ("Northern District") refusing to order special elections for the Albany County Legislature as a remedy for established violations of the Voting Rights Act of 1965, 42 U.S.C. §§ 1971, 1973 to 1973bb–1 (2000) ("VRA"), *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 357 F.3d 260, 263 (2d Cir.2004) ("*Arbor Hill I*"), move in this Court under the VRA for an award of $122,753.07 in costs and attorney's fees in connection with their successful appeal. Defendant County of Albany ("the County") opposes the motion,

contending principally that plaintiffs are not prevailing parties, that prior proceedings make a fee award unavailable, and that the amount requested is unreasonable because, *inter alia*, plaintiffs seek a fee calculated largely with reference to the legal rates prevailing in New York City, rather than in the Northern District. The County also contends that certain components of the request are excessive. For the reasons that follow, we grant the motion for a reasonable attorney's fee, and we refer the motion to the district court for resolution of certain disputed items and for the determination of a reasonable fee calculated with reference to prevailing rates for legal services in the Northern District, unless the district court finds that there are exceptional circumstances warranting reference to rates prevailing in Manhattan.

This action, asserting a VRA challenge to a legislative redistricting plan adopted by the County, was commenced in April 2003 in Albany, within the Northern District, and was litigated in that district. The facts and procedural history of the litigation are detailed in *Arbor Hill I*, 357 F.3d at 261–62, and in district court opinions, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 281 F.Supp.2d 436, 439–42 (N.D.N.Y.2003), and *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 289 F.Supp.2d 269, 271–73 (N.D.N.Y.2003), familiarity with which is assumed.

Both in the district court and on the present appeal, plaintiffs were represented by three law offices: the Albany firm of DerOhannesian & DerOhannesian ("D & D"), the Manhattan office of Gibson, Dunn & Crutcher ("GD & C") located in the Southern District of New York, and The Lawyers' Committee for Civil Rights Under Law ("LCCRUL") based in Washington, D.C. As modified in their reply papers, plaintiffs' present application seeks,

for the appeal, fees for those three firms totaling $109,281.60, plus $13,471.47 in costs and disbursements. The affidavits and time records presented in support of the application include submissions from D & D seeking $9,281.25 in fees plus $2,763.43 in costs, from LCCRUL seeking a fee of $1,575, and from GD & C seeking approximately $98,500 in fees (the precise total being unclear in light of a revision in the GD & C request and a discrepancy in the total amount originally requested) (*compare* Plaintiffs–Appellants' Application for Attorneys' Fees and Costs dated February 17, 2004 ("Plaintiffs' Fee Application"), at 1 and 6 (requesting "$114,442.50"), *with id.* at 9 (requesting "$114,255.00")) plus $10,708.04 in costs. D & D states that its request is based on the rates prevailing for comparable legal services in the Northern District; LCCRUL and GD & C have based their requests on the rates for legal services prevailing in Washington, D.C., and the Southern District of New York respectively.

The County opposes the fee application in its entirety, contending (a) that plaintiffs are not prevailing parties, and (b) that during the district court proceedings it made an offer of judgment pursuant to Fed.R.Civ.P. 68, and that plaintiffs' failure to accept that offer forecloses any award of fees. Alternatively, the County contends that the fees and disbursements requested are excessive because, *inter alia,* GD & C's fee should be calculated in accordance with the legal rates prevailing in the Northern District and various charges are unreasonable.

For the reasons that follow, we conclude that plaintiffs are entitled to an award of fees and costs; but we conclude that certain charges are excessive or questionable, and that GD & C's fee should be calculated with reference to the rates for legal services prevailing in the Northern District,

where the action was commenced and litigated, unless the district court finds, consistent with our discussion below, that there are exceptional circumstances that warrant the calculation of its fee based on rates prevailing in Manhattan.

### A. *Plaintiffs' Entitlement to Attorney's Fees*

■ In an action under the VRA, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1973*l* (e). In determining entitlement to an award under the VRA, we apply the same standards that apply to awards under 42 U.S.C. § 1988. *See generally West Virginia University Hospitals v. Casey,* 499 U.S. 83, 96 n. 6, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) (VRA's fee-shifting provision "parallels § 1988").

■ The County argues that plaintiffs are not entitled to any award of fees for this appeal because such an award "is only authorized for 'a party who has established his entitlement to some *relief on the merits of his claims,* either in the trial court or on appeal.'" (Affidavit of County Attorney Michael C. Lynch dated February 26, 2004, ¶ 8 (quoting *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam) (discussing 42 U.S.C. § 1988) (emphasis in affidavit)).) This principle does not benefit the County. Plaintiffs brought this action contending that the County had violated the VRA; the district court agreed and ordered redistricting. When the district court denied the request for an injunction ordering special elections, plaintiffs appealed, and this Court reversed that ruling and ordered special elections. Thus, even though the appeal did not resolve all aspects of the case, plaintiffs gained a victory that cannot be undone. Both in the trial

court and on appeal, plaintiffs clearly established their entitlement to, and have already received, at least "some relief on the merits of [their] claims."

■ Nor is there merit in the County's contention that a fee award to plaintiffs is foreclosed by an "Offer of Judgment" made by the County during the district court proceedings. Rule 68 provides that if a party makes a timely offer of judgment that is not accepted, and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68. "Offers of judgment pursuant to Fed.R.Civ.P. 68 are construed according to ordinary contract principles." *Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc.,* 962 F.2d 268, 272 (2d Cir.1992). Under such principles, "a promise whose performance depends upon the mere will or inclination of the promisor" is not an offer whose acceptance creates a contract. *Eastern Transportation Co. v. Blue Ridge Coal Corp.,* 159 F.2d 642, 643 (2d Cir.1947). Rather, the Restatement defines an "offer" as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited *and will conclude it,*" *Restatement (Second) of Contracts* § 24 (1981) (emphasis added), and notes that "the key concept involves giving the addressee the apparent power to conclude a contract *without further action by the other party,*" *id.* Reporter's Note Comment a (emphasis added).

■ The County's so-called "Offer of Judgment," made in an August 5,. 2003 letter from County Attorney Lynch to plaintiffs' attorney Paul DerOhannesian II ("County Letter"), included a proposal for a revised redistricting plan; but the proposal was, by its terms, "subject to and contingent upon approval of the Albany County Legislature" (County Letter at 1). The County Letter indicated that the County's proposed undertakings would not be submitted to the Legislature for approval unless and until plaintiffs stated that the terms were acceptable to them; and it contained no representation that, if plaintiffs assented, the Legislature's approval was assured.

The contingent proposal made in the County Letter was not an offer within the meaning of ordinary contract principles, for acceptance by plaintiffs would not have created a contract without further action by the County's Legislature. The proposal thus did not constitute an "offer of judgment" within the meaning of Rule 68.

### B. *Calculation of a Lodestar*

■ We find greater merit in the County's objection to the calculation of GD & C's fee on the basis of the rates for legal services prevailing in the Southern District of New York rather than those prevailing in the Northern District, the venue of the litigation. In federal civil rights litigation, "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (discussing 42 U.S.C. § 1988). This lodestar figure is "to be calculated according to the prevailing market rates in the relevant community." *Id.* at 895, 104 S.Ct. 1541.

Plaintiffs, in support of their request that the award for GD & C's time be calculated with reference to legal fees charged by comparable firms for comparable services in Manhattan, cite *In re "Agent Orange" Product Liability Litigation,* 818 F.2d 226, 232 (2d Cir.1987) ("*Agent Orange*"), for the proposition that "the relevant community for determining

rates is the 'district in which the reviewing court sits.'" (Plaintiffs' Fee Application at 7; *see also* Reply in Support of Plaintiffs–Appellants' Application for Attorneys' Fees and Costs at 5.) Plaintiffs argue that since their application for fees in connection with the appeal had to be filed with this Court, *see Smith v. Bowen*, 867 F.2d 731, 736 (2d Cir.1989), "and this Court sits in the Southern District of New York, the Southern District of New York is the relevant community for determining rates." (Plaintiffs' Fee Application at 7 n. 5.) We disagree.

■ First, the *Agent Orange* language on which plaintiffs rely referred to a fee application reviewed by the district court with respect to proceedings in the district court. When the district court is presented with a fee application for representation in that court, the relevant community for calculation of the hourly rate component of the lodestar is usually the forum district. *See, e.g., Luciano v. The Olsten Corp.*, 109 F.3d 111, 115 (2d Cir.1997); *see generally Agent Orange*, 818 F.2d at 232; *Polk v. New York State Department of Correctional Services*, 722 F.2d 23, 25 (2d Cir.1983). There was no issue in *Agent Orange* as to appellate fees (the case having been settled), and that opinion did not purport to determine what would be the relevant legal community with respect to services that might be rendered in connection with an appeal.

Second, this Court, which is the reviewing court for an application for fees to be awarded for the appeal, does not "sit in a district." Its dedicated courtrooms are in Manhattan; but its jurisdiction encompasses all of New York State, Connecticut, and Vermont. The Southern District of New York is not its forum. For example, we may hold, and occasionally have held, oral argument in locations other than Manhattan. Further, thanks to modern technolo-gy, the panel of this Court that hears an oral argument, and/or the attorneys who present it, may be geographically dispersed. In the present appeal, for example, most of the judges and most of the attorneys were physically present in Manhattan, but, by means of video-conferencing, counsel for the intervenors presented oral argument from Albany, and one member of the panel participated in the oral argument from Connecticut. We see no sound reason for adopting a rule that the relevant community for calculating the lodestar for legal services rendered on appeal is the Southern District of New York simply because this Court usually hears oral argument in Manhattan or because oral argument of the present appeal took place primarily in Manhattan. Rather, where a firm that has represented a party in the district court continues to represent the party on appeal, we see no sound reason why the relevant-community aspect of the lodestar should not be the same at both levels of the litigation.

■ As indicated above, the relevant community for calculation of the lodestar with respect to an attorney's services in the district court is normally the forum district. "We and other circuits have strayed from this rule only in the rare case where the 'special expertise' of non-local counsel was essential to the case, [or] it was clearly shown that local counsel was unwilling to take the case, or other special circumstances existed." *Agent Orange*, 818 F.2d at 232 (quoting *Polk v. New York State Department of Correctional Services*, 722 F.2d at 25).

■ The present action concerns elections only for the Albany County Legislature; all phases of the trial-level litigation were conducted within the Northern District; and no special circumstances have been called to our attention. Plaintiffs have not shown either that the case re-

quired special expertise beyond the competence of Northern District law firms or that all Northern District law firms having such expertise were unable or unwilling to take the case. Given the absence of such evidence, we expect that the district court would view the Northern District as the relevant legal community for purposes of calculating a reasonable attorney's fee for services rendered in this case in the district court. If the Northern District would be the relevant community with respect to the calculation of a reasonable attorney's fee for representation in the district court, the Northern District is the relevant community with respect to the reasonableness of fees for this appeal. GD & C has represented plaintiffs at both levels of this litigation. Only if the district court finds that there are exceptional circumstances that would justify deviating from the general rule and selecting Manhattan as the relevant community for determining the reasonable hourly rates for GD & C's representation of plaintiffs in the district court should Manhattan rates be used for calculating the lodestar with respect to GD & C's fee for this appeal.

Given that we are referring the present application to the district court for resolution of some of the County's challenges to the reasonableness of certain hours and expenditures for which plaintiffs seek compensation, we ask that that court also determine whether there are exceptional circumstances that would warrant calculating the lodestar for GD & C on the basis of prevailing rates in Manhattan, rather than the Northern District.

C. *The County's Challenges to Specific Charges*

■ Finally, we note that the County contends that certain of plaintiffs' attorneys' specific time charges and expenditures are unreasonable. We agree with some of its challenges. For example, plaintiffs seek fees for the attendance of five attorneys at oral argument of the appeal. No doubt this was a consequence of plaintiffs' representation by three law offices, but the total number of attorneys in attendance was excessive, especially when the source of payment is to be the public fisc. Only the hours reasonably necessary for attorney attendance at oral argument should be included in the firms' respective lodestars.

In addition, we question whether preparation of this appeal reasonably required the expenditure of some 300 attorney hours. Plaintiffs' counsel just having litigated the matter intensively in the district court for a period of six months, it is difficult to believe that a large amount of time was needed to prepare the brief's description of the facts and procedural history; and the entire argument section of the brief on this single-issue appeal occupied barely six pages. Unless plaintiffs can persuade the district court that all of the time charges for preparation and briefing of the appeal were reasonably necessary, the number-of-hours component of the lodestar should be further reduced.

■ We are unpersuaded, however, by the County's challenge to plaintiffs' request for reimbursement for $8,277 expended by GD & C for online legal research. Although the County argues that such charges were disapproved by this Court in *Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp.*, 95 F.3d 153, 173 (2d Cir.1996), *Evergreen* was not concerned with a fee-shifting statute. Rather, it held that denial of reimbursement for Westlaw expense was within the discretion of the district court in determining an appropriate sanction to be imposed pursuant to Fed.R.Civ.P. 11. Rule 11 sanctions are designed to deter baseless filings, *see, e.g., Caisse Nationale*

*de Credit Agricole–CNCA v. Valcorp, Inc.,* 28 F.3d 259, 266 (2d Cir.1994); "Rule 11 is not a fee-shifting mechanism and does not create an entitlement" to attorney's fees, *Estate of Calloway v. Marvel Entertainment Group,* 9 F.3d 237, 241 (2d Cir.1993).

In *Evergreen,* we described computer research generally as "a substitute for an attorney's time that is compensable under an application for attorneys' fees." 95 F.3d at 173. Several other Circuits, in considering requests for such reimbursement pursuant to fee-shifting mechanisms, have adopted this view, ruling that charges for computerized research services should be allowed as part of the fee award because such "services presumably save money by making legal research more efficient," *Role Models America, Inc. v. Brownlee,* 353 F.3d 962, 975 (D.C.Cir.2004) (applying Equal Access to Justice Act, 28 U.S.C. § 2412), and because "paying" clients "reimburse[ ] lawyers' LEXIS and WESTLAW expenses, just as [they] reimburse[ ] their paralegal expenses," *In re Continental Illinois Securities Litigation,* 962 F.2d 566, 570 (7th Cir.1992) (applying equitable fund theory in class action litigation). *See generally Case v. Unified School District No. 233,* 157 F.3d 1243, 1257–58 (10th Cir.1998) ("Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate." (applying § 1988)). We agree that the use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award. If GD & C normally bills its paying clients for the cost of online research services, that expense should be included in the fee award.

We express no view on the County's other challenges, such as whether a $102 taxi fare from Manhattan to Connecticut was reasonably necessary, and whether attorneys' travel time should be compensated at the same hourly rates as their time spent on professional services. We ask that the district court resolve these disputes, as well as the open issues discussed above, and determine the extent to which plaintiffs' application requests fees that are reasonable.

## CONCLUSION

Plaintiffs' application for attorney's fees for the successful prosecution of this appeal is granted in principle. We refer the matter to the district court for proceedings to determine, consistent with the foregoing, the amount of the reasonable fee to be awarded for the appeal.