See also 375 F.3d 231.

Albert FARBOTKO, Aleksandra Farbotko, John Farbotko, Eric Hunt, Kirk Lamberti, Harold Boyle, Marion Elder, Donald Favreau, Madeline Favreau, and Lance Macomber, Plaintiffs,

Lucie Akey and Christopher McDonald, Plaintiffs–Appellants,

v.

CLINTON COUNTY OF NEW YORK and William Bingel, in his Official Capacity as Clinton County Administrator, Defendants–Appellees.

Docket No. 04–6314–CV.

United States Court of Appeals, Second Circuit.

Argued: Oct. 7, 2005.

Decided: Dec. 23, 2005.

Mark A. Schneider, Plattsburgh, NY, for Plaintiffs–Appellants.

Robert A. Rausch, Maynard, O'Connor, Smith & Catalinotto, LLP, Albany, NY, for Defendants–Appellees.

Before: WALKER, Chief Judge, FEINBERG and STRAUB, Circuit Judges.

FEINBERG, Circuit Judge.

Plaintiffs-appellants Lucie Akey and Christopher McDonald appeal from a judgment of the United States District Court for the Northern District of New York (David R. Homer, Magistrate Judge) granting their application for attorney's fees and costs pursuant to 42 U.S.C. § 1988(b) and awarding attorney's fees in the amount of $10,962 and costs in the amount of $907.13. Appellees are Clinton County and one of its officials, defendants in the underlying action. We have jurisdiction under 28 U.S.C. § 1291.

Plaintiffs-appellants challenge the district court's use of an hourly rate of $175 as the prevailing market rate for attorney's fees in the Northern District of New York. They claim that the district court failed to consider evidence of prevailing market rates and instead relied solely on the rate fixed in earlier caselaw. They further claim that the district court erred in finding no exceptional circumstances justifying a higher hourly rate for work performed on appeal. We agree with plaintiffs-appellants that the district court—at least when presented with evidence of a divergence between the rate used in prior caselaw and the prevailing market rate—is required to make findings of fact as to the prevailing rate and apply it in its award calculation. But we disagree that any justification exists here for awarding a higher rate in connection with services rendered on appeal. We vacate the award and remand for determination of the reasonable hourly rate and recalculation of the award accordingly.

## I. BACKGROUND

The underlying litigation has already been the subject of one appeal to this Court, see *Akey v. Clinton County*, 375 F.3d 231 (2d Cir.2004) ("Farbotko III"). The events giving rise to that appeal are set forth in full in two opinions of the district court, see *Farbotko v. Clinton County*, No. 99–CV–1946 (DRH), 2003 WL 21303256 (N.D.N.Y. Feb.28, 2003) ("*Farbotko II*"); *Farbotko v. Clinton County*, 168 F.Supp.2d 31 (N.D.N.Y.2001) ("*Farbotko I*"). Proceedings in the district court have been extensive and involved both a jury and a bench trial.

Briefly, in November 1999 plaintiffs filed a class action under 42 U.S.C. § 1983 against appellees alleging principally due process violations in connection with the January 1999 foreclosure of their property by Clinton County for delinquent taxes. Certain causes of action were dismissed by summary judgment, and the claims of four plaintiffs were settled prior to trial.

At trial in July 2002, the jury found appellees entitled to a presumption of receipt of the notices of foreclosure, but also found the presumption rebutted by those class members who could establish that their notices had been sent to an incorrect address. The jury also found in favor of two plaintiffs whose claims were presented at trial.

Following the jury trial, notice of the class action was given. Plaintiffs-appellants were two of 18 property owners who

sought to join the class action. The claims of several of these 18 property owners were either settled or dismissed, while the remainder were by stipulation adjudicated at a bench trial. At that one-day trial in February 2003, the district judge dismissed the claims of the remaining property owners, including those of plaintiffs-appellants. See *Farbotko II*, 2003 WL 21303256.

On appeal, this Court in July 2004 reversed the district court as to the claims of plaintiffs-appellants Akey and McDonald. We found that as to each, the means used by appellees in addressing the foreclosure notices did not satisfy their due process obligations. *Farbotko III*, 375 F.3d at 235–37. Chief Judge Walker dissented as to McDonald's claim and would have reversed as to Akey's claim only. *Id.* at 237–38 (Walker, C.J., dissenting).

In August 2004, plaintiffs-appellants filed an application for attorney's fees in the district court for work performed in connection with the bench trial and the successful appeal.[1] Plaintiffs-appellants requested $41,129 in attorney's fees, repre-senting compensation for 41.7 hours of work performed in the district court at a rate of $200 per hour; 107.7 hours of work performed in this Court at a rate of $250 per hour, and 17.0 hours of travel time to this Court at a rate of $125 per hour. Additionally, plaintiffs-appellants requested an upward enhancement of the entire fee award by 10 percent.

In a memorandum of law submitted in support of their fee application, plaintiffs-appellants conceded that courts in the Northern District routinely awarded $175 per hour, but argued that these rates no longer prevailed, citing one Northern District case and various decisions from neighboring districts awarding higher hourly rates.[2] Plaintiffs-appellants also relied on two cases in which their counsel had previously been awarded fees—a Western District of Texas case awarding counsel $150 per hour in 1991 and a Northern District bankruptcy case awarding counsel $200 per hour in 2002.[3] Plaintiffs-appellants also submitted the attorney affidavits that supported counsel's fee application in the bankruptcy case.[4]

---

1. Counsel had previously been awarded fees amounting to $67,886.67 for certain work performed in this case through March 5, 2003; an hourly rate of $175 was used by the district court in calculating that award. See *Farbotko v. Clinton County*, No. 99–CV–1946 (DRH), slip op. at 8 (N.D.N.Y. May 26, 2003) ("*Farbotko Fee Award* I"). This decision was not appealed.

2. *N.Y. State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc.*, No. 98–CV–1902 (FJS/GLS), 2004 WL 437474, at *2–3, 2004 U.S. Dist. LEXIS 3062, at *7–*10 & n. 4 (N.D.N.Y. Feb. 27, 2004) (ERISA case awarding non-forum counsel with "special expertise" $200 per hour); *Sabatini v. Corning–Painted Post Area Sch. Dist.*, 190 F.Supp.2d 509, 512–16 (W.D.N.Y.2001)(Individuals with Disabilities Education Act case awarding $235 per hour for experienced attorney with education law expertise); *Knoeffler v. Town of Mamakating*, 126 F.Supp.2d

305, 311 (S.D.N.Y.2000) ($300 per hour); *Marisol A. ex rel. Forbes v. Giuliani*, 111 F.Supp.2d 381, 386 (S.D.N.Y.2000) ($350 per hour).

3. *Vega v. Gasper*, No. EP–84–CA–259–B, slip op. at 4 (W.D.Tex. Oct. 18, 1991); *Ayerst Employees Federal Credit Union v. Gregoire (In re Gregoire)*, No. 00–11564, slip op. at 10 n. 6 (Bankr.N.D.N.Y. Aug. 1, 2002).

4. Levine Aff. ¶¶ 5, 7 (stating hourly rate of $175 per hour is "comparable to, if not below" prevailing rate charged by bankruptcy attorneys in the area and $200 per hour is "a reasonable hourly rate for litigators in the Albany area with 20 years experience and experience in Federal Trial and Appellate Courts"); Rosenthal Aff. ¶ 7 (stating counsel in Syracuse comparable to plaintiffs-appellants' counsel "bills at a rate of at least $200.00 per hour in federal cases").

Appellees opposed plaintiffs-appellants' fee application on numerous grounds, but in connection with the requested hourly rates, stated only that counsel should be awarded "no more than $175 per hour, in conformity [with] the hourly rate traditionally awarded to attorneys in this district and the hourly rate awarded" in the first fee award in the instant case, see supra note 1. Rausch Aff. ¶ 22. Appellees submitted no affidavits or other evidence disputing plaintiffs-appellants' evidence of the prevailing market rates in the Northern District.

The district court accepted many of appellees' arguments, reducing the number of hours claimed and ultimately downwardly adjusting the fee award by 40%, a reflection of what it considered to be the "limited success" of the first appeal to this Court. *Farbotko v. Clinton County*, No. 99–CV–1946 (DRH), slip op. at 11–12 (N.D.N.Y. Nov. 10, 2004) ("*Farbotko Fee Award II*").[5] As to the hourly rate, the district court made no mention of the evidence presented by plaintiffs-appellants of the rates prevailing in the Northern District. Instead, referring to two Northern District cases[6] and the first fee award in the instant case, and crediting counsel's representations of his extensive experience, the district court stated: "In this district the maximum hourly rate generally allowed for attorneys with experience comparable to that of [plaintiffs-appellants'] counsel is $175. Given these precedents and in light of the experience and demonstrated ability of plaintiffs' counsel, an

hourly rate of $175 appears appropriate and will be applied." *Id.* at 9 (citations omitted). The district court further rejected plaintiffs-appellants' argument that "exceptional circumstances" justified awarding a higher hourly rate for work performed in this Court in the first appeal. *Id.* at 10. Accordingly, the district court used an hourly rate of $175 as to all work performed, and one-half that hourly rate for travel. *Id.* The final amount of the fee award was $10,962, and $907.13 was also awarded in costs. *Id.* at 13.

On appeal, plaintiffs-appellants focus primarily on the district court's determination of the applicable hourly rate. No challenge is made to the exclusion of hours, to the 40% downward adjustment of the amount of fees awarded, or to the amount of costs awarded. Plaintiffs-appellants argue that the district court erred in failing to consider evidence of the prevailing market rate and relied instead entirely on prior caselaw in fixing the hourly rate. Plaintiffs-appellants also argue that the district court erred in concluding that no "exceptional circumstances" were present meriting an upward adjustment in the hourly rate for work performed in this Court. Plaintiffs-appellants ask us to determine that the applicable hourly rate is $250 as to all work performed and award fees accordingly, or, in the alternative, remand to the district court for reconsideration of the hourly rate or rates to be applied and a recalculation of the fee award.

**5.** The appeal was of "limited success" in the view of the district court because only two of the seven plaintiffs prevailed. A downward adjustment of 40% reflected a compromise between this "limited success" and recognition that because the claims overlapped as to the legal issues some of the time expended on the unsuccessful claims was necessary to prevail on the successful claims. *Farbotko Fee Award II*, slip op. at 12.

**6.** *Plumbers, Pipefitters & Apprentices Local Union No. 112 Pension, Health & Educ. & Apprenticeship Plans ex rel. Fish v. Mauro's Plumbing, Heating & Fire Suppression, Inc.*, 84 F.Supp.2d 344, 356 (N.D.N.Y.2000); *TM Park Ave. Assocs. v. Pataki*, 44 F.Supp.2d 158, 167 (N.D.N.Y.1999), vacated on other grounds, 214 F.3d 344 (2d Cir.2000).

## II. DISCUSSION

### A. Standard of Review

 Attorney's fees are authorized by 42 U.S.C. § 1988(b) for parties prevailing on claims under 42 U.S.C. § 1983 in order "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir.1982). We review the district court's award of attorney's fees for abuse of discretion, *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 757 (2d Cir.1998), and "[a] district court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the record," *id.*

### B. Determination of a Reasonable Hourly Rate

The district court began its inquiry by calculating a "lodestar" or the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Acknowledging the presumption of reasonableness that attaches to the lodestar, the district court then proceeded to consider whether an adjustment of the lodestar was nonetheless warranted to arrive at a reasonable fee. See *Blum,* 465 U.S. at 897, 104 S.Ct. 1541. In so doing, the district court was careful to state its findings in reducing the number of hours claimed, *Farbotko Fee Award II,* slip. op. at 5–8, as well as to provide a not unreasonable explanation for reducing the award by 40% due to what it

considered the "limited success" of the appeal, *id.* at 11–12.

Notably, however, the opinion of the district court did not reflect any findings of fact or other comment on the evidence proffered [7] in support of plaintiffs-appellants' request for hourly rates of $200 and $250 for work performed before the district court and this Court, respectively. Instead, the district court appears to have relied solely on the rate structures applied in other Northern District cases,[8] and, consistent with those cases, set the hourly rate at $175. *Id.* at 9.

 But a reasonable hourly rate is not itself a matter of binding precedent. Rather, under established caselaw, a reasonable hourly rate is the "prevailing market rate," i.e., the rate "prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 896 & n. 11, 104 S.Ct. 1541; see also *Cohen v. W. Haven Bd. of Police Comm'rs,* 638 F.2d 496, 506 (2d Cir.1980) ("[F]ees that would be charged for similar work by attorneys of like skill in the area" are the "starting point for determination of a reasonable award."). The relevant community, in turn, is the district in which the court sits. *Polk v. N.Y. State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir.1983).

Thus, "a reasonable hourly rate" is not ordinarily ascertained simply by reference to rates awarded in prior cases. It is true that the district court in *TM Park Avenue Associates*—a case on which the district court here partially relied—did not simply rely on prior cases, but also considered evidence outside the caselaw in determining that the prevailing market rate in 1999 was $175 per hour. See *TM Park Ave. Assocs. v. Pataki,* 44 F.Supp.2d. 158, 166–

---

7. See supra notes 2–4 and accompanying text.

8. See supra note 6 and accompanying text.

67 (N.D.N.Y.1999), vacated on other grounds, 214 F.3d 344 (2d Cir.2000). The district court here, however, had significant evidence before it that this rate no longer prevailed. Recycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under § 1988(b) and compensation available in the marketplace. This undermines § 1988(b)'s central purpose of attracting competent counsel to public interest litigation.

■ Instead, the equation in the case-law of a "reasonable hourly fee" with the "prevailing market rate" contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel. This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district. See, e.g., *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 82 (2d Cir.2005); *Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir.1987). But determination of the prevailing market rate in the relevant community also requires an evaluation of evidence proffered by the parties. As this Court stated in the analogous—although not identical—context of fee awards under section 505 of the Copyright Act, 17 U.S.C. § 505, "[w]hile not required in every case, an evidentiary hearing, or at the very least an opportunity to submit evidence, is necessary to determine the propriety of a fee award and the amount of such award if it is evident that the material facts necessary for those determinations are genuinely in

dispute and cannot be resolved from the record." *Crescent Publ'g Group, Inc. v. Playboy Enters.*, 246 F.3d 142, 147 (2d Cir.2001) (citing *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir.1997) ("If hourly rates are disputed, the district court must conduct a hearing to determine the reasonable market rates.")).

To be sure, the fee applicant has the burden of showing by "satisfactory evidence—in addition to the attorney's own affidavits"—that the requested hourly rates are the prevailing market rates. *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. 1541. Appellees argue on appeal that the evidence plaintiffs-appellants put before the district court was insufficient to support their requested rates. They claim that the affidavits submitted by plaintiffs-appellants are either unreliable—because they were prepared in connection with unrelated proceedings—or irrelevant—because services rendered in connection with bankruptcy litigation are not sufficiently similar to the services rendered here to provide a point of comparison. Appellees further argue that the affidavits submitted by plaintiffs-appellants nowhere supported an hourly rate of $250 for work performed before this Court; that one affidavit actually indicated that an hourly rate of $175 was "comparable to" the market rate; and that both affidavits gave $200 per hour as the prevailing market rate for attorneys in Syracuse and Albany—metropolitan areas that may not accurately reflect the rate prevailing across the entire Northern District. It may be that the district court considered and simply rejected plaintiffs-appellants' evidence of higher prevailing market rates.[9] But on the record before

9. On a different record, following referral by this Court of a motion for appellate fees, Magistrate Judge Homer recommended an hourly rate of $210 for experienced attorneys as the prevailing market rate in the Northern

District. See *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, No. 03–CV–502 (NAM/DRH), 2005 WL 2346084, at *7, 9 (N.D.N.Y. Sept. 23, 2005) ("*Arbor Hill Fee Award*"), adopting report and recommen-

us, we cannot be sufficiently sure of that. We do not mean to suggest that the courts of the Northern District have erred in any case where they may have relied exclusively on an hourly rate set in prior caselaw in fixing fee awards. Such reliance may be proper in the absence of any credible evidence by the fee applicant of a higher prevailing market rate. In any event, only this case is before us. And as to this case alone, the decision of the district court does not provide an adequate basis for review of its reliance on an hourly rate set by exclusive reference to the caselaw where contrary evidence was proffered by the fee applicants.

Plaintiffs-appellants also ask us to set the hourly rate and recalculate the award ourselves, invoking our original jurisdiction.[10] There is no need to explore the subject of original jurisdiction in this connection because we clearly have jurisdiction over this appeal. But under the circumstances, sound judicial administration counsels against calculating the award ourselves. Remand to the district court for fact-finding and recalculation is far preferable. The district court is in closer prox-imity to and has greater experience with the relevant community whose prevailing market rate it is determining. Cf. *A.R. ex rel. R.V.*, 407 F.3d at 81 n. 16 (noting, but not deciding, that requiring district court to "set rates principally looking to standards prevailing within its own district . . . . enables the court to develop and apply expertise regarding the prevailing market rates there, among lawyers with whom and with whose practice the court has ready familiarity").

Accordingly, we vacate the fee award and remand to the district court for findings of fact as to the rate "prevailing in the [Northern District] for similar services by lawyers of reasonably comparable skill, experience, and reputation" and, if necessary, recalculation of the fee award. In so doing and consistent with the foregoing analysis, the district court may have recourse to any evidentiary submissions by the parties (including holding an evidentiary hearing, where necessary, to resolve factual disputes), take judicial notice of the rates awarded in other cases (including its own recommendation of $210 adopted in *Arbor Hill Fee Award*, if probative),[11] and

---

dation, 2005 WL 670307, at *7 (N.D.N.Y. Mar.22, 2005).

**10.** To that end, plaintiffs-appellants supplement their evidence of the prevailing market rate in the record with a number of materials. These include additional Southern District of New York cases awarding fees ranging from $300 to $400 per hour; evidence proffered in the *New York State Teamsters* case cited to the district court of a Syracuse law firm's billing rates of $185 to $225 per hour, see *N.Y. State Teamsters*, 2004 WL 437474, at *2–3, 2004 U.S. Dist. LEXIS 3062, at *8–*9; and a *National Law Journal* sampling of billing rates, listing billing rates of $190 to $405 per hour for a Syracuse law firm and $250 to $350 per hour for a Rochester law firm with an office located in the Northern District of New York. Plaintiffs-appellants also cite to two Northern District cases awarding a rate of $175 per hour in 1992, and include a calculation using the Consumer Price Index showing that $175 in 1992 has the buying power of $235.62 in 2004. Appellees, in turn, make various challenges to the sufficiency and propriety of this evidence, including that plaintiffs-appellants made no argument about the Consumer Price Index to the district court. However, this would not bar them from doing so on remand.

**11.** Appellees argue *Arbor Hill Fee Award* is not probative, because the recommendation of Magistrate Judge Homer in that case was for a time period postdating the time period in which the "fees were incurred" here. Letter from Robert A. Rausch to the Court, at 1 (Aug. 15, 2005). The services compensated in *Arbor Hill Fee Award*, however, were rendered between April 2003 and August 2004, approximately the same time period in which the fees were incurred here. See *Arbor Hill Fee Award*, slip op. at 2–3. In any event, we

rely on its own familiarity with the prevailing market rates in the Northern District.

We do not disturb the fee award in any other respect,[12] and for the reasons stated below, find that the hourly rate should not differ for work performed on appeal. Thus, we anticipate that if the district court concludes that the prevailing market rate differs from the $175 previously awarded, it need do no more than "plug" the newly determined hourly rate into its original calculations to arrive at a reasonable fee award.

## C. Hourly Rate for Services Rendered on Appeal

Plaintiffs-appellants argue in the alternative that even if $250 per hour is not the prevailing market rate in the Northern District, the district court erred in determining that there were no exceptional circumstances meriting an hourly rate of $250 for work performed on appeal. Plaintiffs-appellants apparently cite to this Court's most recent decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 96 (2d Cir.2004) (per curiam), for the proposition that exceptional circumstances may justify a higher hourly rate for work performed on appeal.

But *Arbor Hill* establishes no such proposition. Instead, *Arbor Hill* stated that "where a firm that has represented a party in the district court continues to represent the party on appeal, we see no sound reason why the relevant-community aspect of the lodestar should not be the same at both levels of the litigation." *Id.* at 96. The *Arbor Hill* panel then went on to restate the exceptions that justify selecting a non-forum district as the "relevant community" for calculation of the lodestar: "where the special expertise of non-local counsel was essential to the case, [or] it was clearly shown that local counsel was unwilling to take the case, or other special circumstances." *Id.* (internal quotation marks omitted). In those rare cases, the use of rates prevailing in some other, relevant district may be justified, but use of those rates would apply equally to work performed at trial and on appeal. See *id.* at 97. ("Only if the district court finds that there are exceptional circumstances

---

12. have held that "the rates used by the [district] court to calculate the lodestar amount should be 'current rather than historic hourly rates.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)). Because attorney's fees are often awarded long after services have been rendered, this rule was designed to compensate litigants for the delay in payment. See *Jenkins*, 491 U.S. at 283, 109 S.Ct. 2463 (observing that "compensation received several years after the services were rendered ... is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings"); *Fletcher*, 143 F.3d at 764 (instructing the district court on remand in seven-year litigation to apply "current rates, rather than historic rates" in order to "compensate for the delay in payment").

12. At oral argument, plaintiffs-appellants reemphasized an argument made in their reply briefing to this Court: Plaintiffs-appellants claim that courts in the Northern District have consistently made the further error of "set[ting] this rate for civil rights cases, for civil rights lawyers," rather than looking to rates prevailing in the district for complex federal litigation more generally. Oral Arg. Tr. 6:18–20, Oct. 7, 2005. We need not address this argument now because the opinion of the district court is silent as to whether it applied a rate exclusively set for civil rights litigation. We note, however, that "[Congress] intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature." S.Rep. No. 94–1011, at 6 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913.

that would justify ... selecting Manhattan as the relevant community for determining the reasonable hourly rates ... in the district court ... should Manhattan rates be used for calculating the lodestar ... for this appeal."). Thus, under *Arbor Hill*, plaintiffs-appellants should have argued, if anything, that use of another district as the "relevant community" for purposes of calculating the lodestar as to all work performed was justified. Instead, appellants argued that a higher rate was justified only as to work performed on appeal, a proposition that finds no support in *Arbor Hill*. Thus, whatever hourly rate the district court determines to be the prevailing market rate in the Northern District should also apply to those hours expended on appeal.

### III. CONCLUSION

For the foregoing reasons, we vacate the award of attorney's fees and costs and remand for determination of the reasonable hourly rate and recalculation of the award accordingly.