Elizabeth LUESSENHOP, Plaintiff,

v.

CLINTON COUNTY, NEW YORK, William Bingel, in his Individual Capacity and in his Official Capacity as Clinton County Administrator, and Janet Duprey, in her Individual Capacity and in her Official Capacity as Clinton County Treasurer, Defendants.

Civ. No. 1:04–CV–263 (RFT).

United States District Court, N.D. New York.

March 28, 2008.

Office of Mark A. Schneider, Mark A. Schneider, Esq., of counsel, Plattsburgh, NY, for Plaintiff.

Maynard, O'Connor, Smith & Catalinotto, Robert A. Rausch, Esq., of counsel, Albany, NY, for Defendants.

### *MEMORANDUM–DECISION AND ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

This litigation has had a long history by virtue of a series of contested dispositive motions and an appeal to the Second Circuit. The matter has settled and the motion currently before the Court, hopefully, will be the epilogue to this litigation. Luessenhop has filed a Petition seeking the amount of $99,082.53 for attorney's fees and costs. Dkt. Nos. 77, Pl.'s Not. of Mot, dated Oct. 29, 2007, & 81, Pl.'s Reply.[1] The Clinton County Defendant vigorously opposes Luessenhop's Petition. Dkt. Nos. 79, Robert Rausch, Esq., Aff., dated Nov. 15, 2007, with Exs., & 80, Def.'s Mem. of Law. In defense of her Petition, Luessenhop files a Reply Affidavit and another Memorandum of Law. Dkt. Nos. 81, Mark Schneider, Esq., Aff., dated Nov.

20, 2007, & 81–2, Reply Mem. of Law. Indicative of this vigorously contested litigation is the Fee Application itself. The parties' respective counsel have battled recently over other fee applications in similar types of cases and this Application is no different. As done in the past practice, the litigators have poured significant energy into exhuming every conceivable factual and conceptual nuance, and maybe unnecessarily so, in supporting and opposing this Fee Petition, which will indubitably require us to plow enduringly through mounds of minutiae.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Normally, we would presume familiarity with the facts of this litigation. However, we are compelled to recite the procedural history to assign proper context for this Fee Application.

This entire litigation arises out of Clinton County's method of notifying Plaintiff of her delinquency in paying taxes due on her property prior to foreclosing on such property. After Luessenhop unsuccessfully pursued redress in the state courts,[2] on

---

1. As we have previously indicated in this case, as we have done in other civil rights cases, the eligibility for attorney's fees is bestowed upon the prevailing party and not the attorney. Dkt. No. 75, Order, dated Oct. 15, 2007, at pp. 2–3 n. 3 (citing *Evans v. Jeff D.*, 475 U.S. 717, 730–31, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986)). This Motion for Attorney Fees is comprised of the following: 77–2, Mark Schneider, Esq., Aff., dated Oct. 29, 2007; 77–3; Mark S. Mishler, Esq., Affirm., dated Oct. 23, 2007; 77–4 & 5, Arthur Woolf, Ph.D. Report, dated Oct. 29, 2007, & Ex.; 77–6, Elizabeth Luessenhop Aff., dated Oct. 29, 2007; 77–7, Paul DerOhannesian II, Esq., Aff., dated Oct. 26, 2007; 77–8, John E. Clute, Esq., Aff., dated Oct. 24, 2007; 77–9, John Hector, Esq., Aff., dated Oct. 26, 2007; 77–10, Terence L. Kindlon, Esq., Aff., dated Oct.

25, 2007; 77–11, Mem. of Law, dated Oct. 29, 2007; 78, Mark Schneider, Esq., Supplemental Aff., dated Nov. 6, 2007.

2. Succinctly, Luessenhop had an established, dubious history of persistently paying her property taxes inordinately late. After other tax delinquency notices were mail to her, in 2002, Clinton County mailed a notice of foreclosure via certified mail as required under New York State Real Property Law § 1125. Though the certified mailed notice was returned unclaimed, the County did not remail the notice. A judgment of default was secured by the County. Plaintiff moved in state court to vacate the default judgment on the grounds that her due process rights were violated. Her motion was denied and that denial was appealed. The New York Appellate Division, Third Department denied the appeal

March 11, 2004, she commenced this federal action alleging that, pursuant to 42 U.S.C. § 1983, County Defendants violated her Due Process rights by the manner in which they mailed Luessenhop a foreclosure notice. The parties were granted seven months to conduct discovery, and certain discovery issues culminated into a Motion which ultimately led to an Order. *See generally* Dkt. Nos. 16–18, & 19, Order, dated Oct. 19, 2004. On January 5, 2005, County Defendants filed a Motion for Summary Judgment, Dkt. No. 25, which Luessenhop opposed and filed a Cross–Motion for Summary Judgment, Dkt. No. 29. On July 20, 2005, this Court issued a Memorandum–Decision and Order, granting County Defendants' Motion for Summary Judgment, dismissing Luessenhop's Cross–Motion, and dismissing each of her claims. Dkt. No. 37. A Notice of Appeal was immediately filed to the Second Circuit.

On April 26, 2006, after the Appeal had been perfected, but before the Second Circuit had rendered a decision, the United States Supreme Court rendered a Decision in the matter of *Jones v. Flowers,* 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), which had a pivotal consequence on the Appeal. Based upon the "intervening Supreme Court case of *Jones v. Flowers,*" the Second Circuit rendered a Decision determining that Clinton County's efforts to provide effectual foreclosure notice to Luessenhop were insufficient, and "reversed and remanded [the matter] for further proceedings not inconsistent with [its] opinion." Dkt. No. 43, 2d Circuit Mandate; *Luessenhop v. Clinton County,* 466 F.3d 259, 272 (2006).

Immediately upon the remand, the parties engaged in negotiations, but were un-able to fully settle the matter. Their inability to resolve the case provoked the County Defendants to file a Motion to Dismiss based upon the individual Defendants' entitlement to qualified immunity and sought to dismiss both compensatory and punitive damages against all Defendants. Dkt. No. 48. On April 6, 2007, we issued a Memorandum–Decision and Order, granting in part and denying in part that Motion to Dismiss. Dkt. No. 56. We found that the individual Defendants, Bingel and Duprey, were entitled to qualified immunity and dismissed them from this action, and further found that punitive damages could not be pursued against a municipal defendant.

Not to be deterred by this dispositive event, Luessenhop filed a Motion to Amend her Complaint, essentially alleging that Clinton County continued to violate her rights by refusing to reconvey her property back to her after the Second Circuit Mandate. Dkt. No. 59. On July 9, 2007, this Court issued an Order granting in part and denying in part the Motion to Amend. Dkt. No. 67. Most of the requested relief was denied, but we granted Luessenhop permission to file a partial motion for summary judgment as to injunctive relief. We further noted that failing the filing of this partial motion for summary judgment, the case would be deemed trial ready.

Settlement negotiations renewed and on September 28, 2007, a Judgment dismissing the action by reason of settlement was filed. Dkt. No. 72. The crux of this settlement is that Luessenhop receives her property and the sum of $13,000. However, an agreement as to attorney's fees could not be reached. As a prelude to this

and Luessenhop's request for leave to appeal to the New York Court of Appeals was also denied. *Luessenhop v. Clinton County,* 100 N.Y.2d 637, 769 N.Y.S.2d 197, 801 N.E.2d 418 (N.Y.Ct.App.2003).

Fee Petition, Luessenhop sought reconsideration of a previous order denying discovery of Defendants' counsel's hourly rate and hours expended in defending this action. Dkt. No. 74. This Court issued an Order that, *inter alia*, denied reconsideration and invariably noted our informed discretion to deny this type of discovery in order to avoid needless protraction of this litigation and our ken of the fact that the hourly rate of the losing party is simply and generally not relevant to determining prevailing rates. Dkt. No. 75, Order, dated Oct. 15, 2007.

## II. DISCUSSION

### A. Attorney Fees

█ Pursuant to 42 U.S.C. § 1988, Luessenhop seeks attorney's fees and costs in the amount of $99,082.53. Dkt. Nos. 77–2, 78, & 81. In determining whether a civil rights plaintiff is entitled to attorney's fees and costs, the court must determine whether (1) the plaintiff is the prevailing party and (2) the fees requested are reasonable. *Gatti v. Cmty. Action Agency of Greene County, Inc.*, 263 F.Supp.2d 496, 515 (N.D.N.Y.2003) (citing *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) & *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir.1996)).

### 1. Prevailing Party

█ Our first order of business is to determine if Luessenhop is entitled to attorney fees. In any action to enforce a § 1983 action, a court may, in its discretion, allow the prevailing party reasonable attorney's fees and cost. 42 U.S.C. § 1988(b). As instructed by the Supreme Court, reasonable attorney's fees should be awarded to a prevailing party unless special circumstances would render such an award unjust. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A party is considered a prevailing party if they "receive actual relief on the merits of [her] claim," *Gatti v. Cmty. Action Agency of Greene County, Inc.*, 263 F.Supp.2d at 515 (citing, *inter alia*, *Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir.1998)), or "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the action," *Wilder v. Bernstein*, 965 F.2d 1196, 1201–02 (2d Cir.1992) (quoting *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. 1933). As long as the relief either directly benefits the plaintiff or "materially alters the legal relationship between the parties by modifying the defendants behavior," even if it is nominal damages, the party qualifies as prevailing. *Farrar v. Hobby*, 506 U.S. at 111–12, 113 S.Ct. 566; *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir.1992) (citing *Hewitt v. Helms*, 482 U.S. 755, 760–61, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) for the proposition that the "[r]elief … need not be judicially decreed for a party to be eligible for a fee award"); *United States v. Bd. of Educ. of Waterbury Conn.*, 605 F.2d 573 (2d Cir. 1979) (intervenors contributed to consent decree and were found to be prevailing party). It is therefore axiomatic that "[t]he fact that [plaintiff] prevailed through settlement rather than through litigation does not weaken her claim to fees." *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (quoted in *Lyte v. Sara Lee Corp.*, 950 F.2d 101, 103–04 (2d Cir.1991)); *Wilder v. Bernstein*, 965 F.2d at 1202 (noting that a party is considered a prevailing party whether securing a formal judgment, settlement, or consent decree); *Raishevich v. Foster*, 247 F.3d 337, 345 (2d Cir.2001) (noting that a party prevails when achieving a result from settlement "of the same general type as the relief sought"). Here, Luessenhop settled this matter recovering her property from the legal clutches of Clinton County and the

sum of $13,000.[3] Dkt. No. 72, Judgment Dismissing the Action by Reason of Settlement. We conclude, *a fortiori*, that Luessenhop is a prevailing party and may be entitled to an award of attorney's fees and costs.

Clinton County argues that this Court should reject or significantly reduce any award of attorney's fees because the settlement was the result of a dynamic change of law in the middle of the litigation and it would be totally unfair to hold them accountable for Luessenhop's fees because of this shift. When confronted with a factual scenario similar to Luessenhop's and with the mission of resolving conflicts among the circuits, the United States Supreme Court in *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), fundamentally changed the course of the case law and the manner in which foreclosure notifications must be provided in order to meet due process requirements. Because of this shift in the law, Clinton County concomitantly posits that it always acted and defended this case upon the existing, prevailing law and held positions that were "reasonable and substantially justified." In this regard, Clinton County points the Court to *Gildor v. United States Postal Serv.*, 510 F.Supp.2d 181 (N.D.N.Y.2007), in an effort to exonerate them from the imposition of such a fee. Dkt. No. 80 at pp. 2–3. Clinton County's argument fails on two accounts.

We need not rehash previous case law or our previous Memorandum–Decisions and Orders on the matter, but we will accept the County's position that the existing law on due process implications of foreclosure notices sent by certified mail was leaning in its favor, at least within the Second Circuit, until *Jones v. Flowers*.[4] The findings and ruling of *Jones*, however, affirmed Luessenhop's position throughout

3. Yet, as a part of the Settlement, Luessenhop had to pay her delinquent property taxes for the period of 2002 to 2006.

4. Luessenhop's counsel disagrees that the Supreme Court pronounced new law in this area. Dkt. No. 81–2 at p. 1. Since he was involved in *Akey v. Clinton County*, 375 F.3d 231 (2d Cir.2004), he argues that the *Akey* decision had set the controlling law for Luessenhop's facts. Interestingly enough, if *Akey* settled the law in the Second Circuit, the Circuit surely did not mention it when it decided the appeal in *Luessenhop v. Clinton County*, 466 F.3d at 270. Because Luessenhop's facts were similar to the facts before the Supreme Court, the Second Circuit succinctly held that the intervening decision of *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) controlled. *Akey* stands for the legal proposition that if a county forwards a foreclosure notice by regular mail, relying upon an outdated address, and said notice was returned undeliverable, said reliance was unreasonable. Under these circumstance, *Akey* now makes it incumbent upon the County to use reasonably diligent efforts to ascertain the tax payer's correct address.

This is not the issue in this case. To assert that "[t]he Supreme Court expressly relied upon *Akey v. Clinton* and *Kennedy v. Mossafa* [100 N.Y.2d 1, 759 N.Y.S.2d 429, 789 N.E.2d 607 (2003)] in deciding *Jones*," is as inflated as it is presumptuous. Dkt. No. 81–2 at p. 1. The only time *Akey* was mentioned was to note conflicts among the circuits and state courts as to degree the Due Process Clause may require additional steps to notify property owners. *Jones v. Flowers*, 547 U.S. at 225, 126 S.Ct. 1708. Thereafter, *Akey* was never cited again and hardly could be considered a controlling or persuasive precedent.

Moreover, as the Supreme Court in *Jones* acknowledged, prior to *Jones*, there was ample precedent condoning notice by mail as being reasonably certain to inform those affected. But the Supreme Court continued by stating that "we have never addressed whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice failed. **That is a new wrinkle,** and we have explained that the 'notice required will vary with circumstances and conditions.'" *Jones v. Flowers*, 547 U.S. at 227, 126 S.Ct. 1708. (citation omitted) (emphasis added).

this litigation, a position we did not initially accept. Furthermore, although the Second Circuit had not addressed our set of facts in previous due process decisions, there was no absolute certainty that the Second Circuit would not have viewed Luessenhop's Appeal the same as *Jones.* That change in the law ushered by the Supreme Court allowed Luessenhop to prevail on her appeal and in this litigation. Whether the timing of *Jones* was fortuitous or eventual is of little moment. The current law shifted to her favor and because of that transmutation Luessenhop has, in fact, prevailed. The County does not cite, nor have we been able to find, any precedent to support the notion that a turn in the law during the course of the litigation precludes the winning party from being deemed the prevailing party.[5]

We further disagree that *Gildor v. United States Postal Service,* is analogous and Clinton County's reliance upon this case is misplaced. Unlike our case, in *Gildor,* the United States Government was successfully sued and plaintiff sought, under the Equal Access to Justice Act (EAJA), entitlement to attorney fees and out-of-pocket expenses incurred while litigating the case. *Gildor,* 510 F.Supp.2d 181; 28 U.S.C. § 2412(a),(b). Under EAJA, a court shall award a prevailing party attorney fees, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). This statutory provision is exclusively applicable to the United States as a party; there is no corresponding reference to state governments or municipalities. 28 U.S.C., Ch. 161, § 2401, *et seq.* Nowhere within this legislative chapter has Congress extended the EAJA to state and municipal governance. Though Clinton County's position throughout this litigation, until *Jones v. Flowers,* may have been substantially justified, neither *Gildor,* other court precedents, nor the underlying statute provide a basis to prevent us from finding Luessenhop a prevailing party. *See Pierce v. Underwood,* 487 U.S. 552, 559, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (defining "substantially justified" and further that the EAJA applies to suits against the United States).

In a similar vein, the County asserts Luessenhop should not be permitted to recover attorney's fees or, if fees are awarded, such award should be appreciably reduced because she only achieved partial success, at best. Clinton County points to Luessenhop's lack of success on most of her causes of action, and the fact that most of her arguments after the remand were also denied. Dkt. Nos. 79 at

---

**5.** Clinton County cites *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) and *Levy v. Alfano,* 47 F.Supp.2d 488 (S.D.N.Y.1999) in support of its conclusion that municipal actors can be held liable only if they knew that their actions would violate one's constitutional rights. The facts of these two cases are not particularly helpful to Defendant's position and it is reading "municipal actors" too broadly. These cases dealt primarily with municipal defendants being sued in their individual capacity, in which qualified immunity would be properly invoked, or the lack of viability of the legal notion of *respondent superior* against the municipality, the remaining party in the litigation. Without a showing of custom and practice, liability against the municipality cannot stand. In our case, this Court already determined that Bingel and Duprey were not liable because of qualified immunity, *respondent superior* is not a factor, and we were addressing a municipality's custom and practice. *Levy v. Alfano* also mentions that the municipality would not be liable for an "unique occurrence," especially when that single incident did not rise to the level of a custom and policy and would be dismissed pursuant to *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). 47 F.Supp.2d at 478.

¶¶ 14–18, & 80 at pp. 4–5. In the County's view, Luessenhop "did *not* substantially prevail on her claims and that her limited success in this case did not come about as a result of the efforts of her attorney." Dkt. No. 79 at ¶ 19 (emphasis in original).

Both the United States Supreme Court and the Second Circuit have clearly expounded on whether a prevailing party's attorney's fees should be reduced because of limited or partial success. We note the Supreme Court's insightful instruction on this subject:

We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. On remand the District Court should determine the proper amount of the attorney's fee award in light of these standards.

*Hensley v. Eckerhart*, 461 U.S. at 440, 103 S.Ct. 1933.

The most critical factor "is the degree of success obtained[.]" *Healey v. Leavitt*, 485 F.3d 63, 72 (2d Cir.2007); *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir.2005). The Second Circuit has followed the *Hensley*'s ruling that the plaintiff should not have his fee reduced because he failed to prevail on every contention, but they also conformed to the view that a district court has the authority to reduce the fee award for a partial or limited success, which is not restricted "either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory." *Kassim v. City of Schenectady*, 415 F.3d at 253 & 256; *see also Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("[Plaintiff is] not entitled to a fee award for unsuccessful claims that were based on different facts and different legal theories[.]" (internal quotations marks and citations omitted)). But where both successful and unsuccessful claims are "inextricably intertwined, and involve a common core of facts or are based upon related legal theories[,]" a plaintiff's request for this type of relief should be granted. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999) (internal quotation marks and citations omitted); *see Hensley v. Eckerhart*, 461 U.S. at 435, 103 S.Ct. 1933 (noting that in cases where the "plaintiff's claim for relief … involve[s] a common core of facts or [is] based upon related theories" the court should focus on the overall relief obtained). The focus always remains on the overall relief obtained in the litigation. *Green v. Torres*, 361 F.3d 96, 98–99 (2d Cir.2004) (citing *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933 and further noting that attorney fees may be awarded for unsuccessful claims as well as successful claims). We must now determine the extent of Luessenhop's victory.

 Even when confronted with the obvious facts that most of her causes of actions did not survive and she endured several unfavorable rulings, Luessenhop hardly concedes any limitation in the degree of her success. The County's argument that Luessenhop lost most of her applications before this Court and became

victorious by virtue of legal happenstance may be considered by some to be a shrewed observation of the events, but it is not legally persuasive.[6] Because Luessenhop garnered the return of her property, money damages, and a possible change in county procedures-based upon a common core of facts and legal theories—we find that she significantly accomplished her overall objective and the relief she sought. If there were discrete theories or facts in this case, they cannot be readily distinguishable from the core principles permeating throughout her claim. In fact, the major thrust of her legal positions was vindicated by *Jones v. Flowers* and the Second Circuit's Mandate. Dkt. No. 43. Moreover, it would be inappropriate for us to consider reducing the size of the award because the damages and the relief recovered were modest. Finding it impossible to calculate and enforce, the United States Supreme Court disapproved of the notion that there should be a rule of proportionality as to the award of attorney's fees and the monetary damages. *City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (finding no

authority within the statute to adopt such a rule); *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 524–26 (2d Cir.1991) (citing *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir.1985), for the proposition that attorney's fees should not be reduced because of a lower amount for damages); *Kassim v. City of Schenectady*, 415 F.3d at 252 (rejecting the notion that the fee must be reduced because it would be "disproportionate to the financial interest at stake in the litigation"). Unless the quality of the representation was suspect, "[t]ying [the award of attorney's fees] to the amount of damages would subvert the statute's goal of opening the court to all who have meritorious civil rights claims." *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98 (2d Cir.1997) (citations are omitted).[7] Moreover, a prevailing party is not limited to recovery on successful motions alone. Indeed unsuccessful motions too are compensable as long as they are not frivolous. *Blissett v. Casey*, 969 F.Supp. 118, 130 (N.D.N.Y.1997) (citations omitted). Based upon this entire discussion, we find no reason to reduce any attorney's fees that may be awarded based upon the level of

---

**6.** The County's attorney had successfully raised similar arguments against Schneider's fee application in *Farbotko v. Clinton County*, 1:99–CV–1946. The Honorable David R. Homer, United States Magistrate Judge, adjusted downward the lodestar by 40% to reflect the limited success obtained by Schneider. However, the facts in *Farbotko* and our case are dissimilar. In *Farbotko*, counsel represented six distinct plaintiffs apparently on similar legal grounds but different facts, but only two prevailed. Here, Schneider only pled alternative theories on a common core of facts on behalf of one client.

**7.** The *Orchano* Court listed several cases where the attorney's fees far exceeded the damages recovered: [A] reasonable fee may well exceed the prevailing plaintiff's recovery, *see, e.g., City of Riverside v. Rivera*, 477 U.S. 561, 564–67, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (approving fee award of $245,456.25

after recovery of $33,350 on claims of warrantless entry and excessive force); *Grant v. Bethlehem Steel Corp.*, 973 F.2d 96, 101–02 (2d Cir.1992) (approving fee award of $512,590.02 in employment discrimination class action settled for damages totaling $60,000), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993); *Cowan v. Prudential Ins. Co. of America*, 935 F.2d at 523, 528 (directing district court to award fees of $54,012.76 in employment discrimination case in which plaintiff recovered damages of $15,000); *cf. United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir.1989) (approving fee award of $5.5 million following antitrust plaintiff's recovery of three dollars in damages), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990).

*Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98–99 (2d Cir.1997)

success at each stage of this litigation and the ultimate outcome.

### 2. Reasonable Attorney Fees

Now that we have decided Luessenhop is a prevailing party, we must turn our attention to determining what would constitute a fee that is reasonable. Recently, the Second Circuit disabused district courts from concentrating on calculating a reasonable fee and instead guided the focus toward setting a reasonable hourly rate. Once a reasonably hourly rate is set, it should be employed to calculate the "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Assn'n v. County of Albany*, 493 F.3d 110, 117 & 118 (2d Cir.2007).[8] Although the Second Circuit loathes the employment of "lodestar" as a metaphor in this determination,[9] it directs nonetheless that in order to set the presumptively reasonable fee we should utilize the traditional "lodestar method," that is, multiplying the reasonably hourly rate by the reasonable number of hours expended. *Id.* at 111–12. The Circuit further extrapolated on the calculation methodology by stating that

> [w]e think the better course—and the one most consistent with attorney's fees jurisprudence—is for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. **The reasonable hourly rate is the rate a paying client would be willing to pay.** In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson*

---

8. Luessenhop argues, without any legal support, that *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117 (2d Cir.2007), is merely dicta, and at best instructive. Dkt. No. 77–11 at p. 11 We respectfully disagree with Luessenhop and find that indeed *Arbor Hill* is controlling. We are not alone in our assessment that *Arbor Hill* is controlling. There are legions of cases decided after *Arbor Hill* that subscribe to it as being controlling. *See infra* note 12.

She further contends that *Arbor Hill* is relegated solely to Voting Rights cases. Dkt. No. 77–11 at pp. 10–11. This contention is misplaced as well. The Supreme Court's and Second Circuit's discussions over the past several decades relative to calculating reasonable attorney's fees have cut across various analogous statutes that grant an award of attorney fees. This legal maxim has never been in dispute and remains firmly planted in most, if not all, fee discussions whether the fees have been computed under § 1988, the Voting Rights Act, Title VII or, let's say as an example, section 505 of the Copyright Act. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (finding two fee statutes, §§ 304(d) and 1988, nearly identical and stated that they should be inter-

preted similarly); *Paramount Pictures Corp. v. Hopkins*, 2008 WL 314541 (N.D.N.Y. Feb.4, 2008) (copyright action); *Gatti v. Cmty. Action Agency County, Inc.*, 263 F.Supp.2d 496 (Title VII); *see also Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir.2005) (referencing the analogous context of the fee award section 505 of the Copyright Act in a § 1983 action). With all of this being said, not every fee statute is interchangeable every instances with the others listed above. *See, e.g.,* Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A); *see generally supra* Parts II. A.1 & *infra* II.A.2.b.

9. On one hand, the Second Circuit announced that since "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness[,] this [Court] abandons its use." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d at 117. But, realizing that it may be difficult to abandon this "entrenched term," the Second Circuit now identifies lodestar as a misnomer and "generally agree[s] and employ[s] the term here only as a point of orientation." *Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 142 n. 5 (2d Cir. 2007).

factors; **it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.** The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Id.* at 117–18 (emphasis added); *Rahiym–Amir v. Bellamy of Corinth, Inc.*, 2007 WL 4573409, at *5 (N.D.N.Y. Dec.26, 2007).

■ In calculating this presumptively reasonable fee, we should use the "approximate market rate [now euphemistically called the prevailing rate] for an attorney's services[.]" *Arbor Hill*, 493 F.3d. at 120 (citing *Missouri v. Jenkins*, 491 U.S. 274, 283, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)). "[T]he equation . . . of a reasonable hourly fee with the prevailing market rate contemplates a case-specific inquiry into the prevailing market rates" whereby a court looks "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Farbotko v. Clinton County*, 433 F.3d 204, 209 & 210 (2d Cir.2005); *Reiter v. MTA New York City Trans. Auth.*, 457 F.3d 224, 233 (2d Cir. 2006) (quoting *Farbotko*, 433 F.3d at 210).

■ The prevailing market rate is to be determined by those rates prevailing within the relevant community. *Arbor Hill Concerned Citizens*, 493 F.3d at 118 & 119 (what a reasonable client in the relevant geographic area would pay). That relevant community is deemed to be district wide. *Id.* at 118 (citing *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983) for the proposition that the relevant community is where the district court sits); *see also In re Agent Orange Prod. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987) (finding the relevant community to be the district where the case is brought). Such a determination is best left to the district court because it is in "closer proximity to and has greater experience with the relevant community whose prevailing market rate it is determining." *Arbor Hill Concerned Citizens*, 493 F.3d at 121 (quoting *Farbotko*, 433 F.3d at 210). Although the fee applicant has the burden of showing by satisfactory evidence, which may include an attorney's affidavit, that the requested hourly rate is the prevailing market rate, *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), it is incumbent upon the district court to take judicial notice of rates in prior cases, the evidence submitted by the parties, and its own familiarity and experience with rates within its relevant community, *Farbotko*, 433 F.3d at 209 & 210–11. *See also Patterson v. Balsamico*, 440 F.3d 104, 124 (2d Cir.2006). And the court must set a fee, which is adequate to attract competent counsel but not produce a windfall, *Blum v. Stenson*, 465 U.S. at 893–94, 104 S.Ct. 1541, always "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *Arbor Hill Concerned Citizens*, 493 F.3d at 118. That fee is to be current, not historical. *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998) (citing *Missouri v. Jenkins*, 491 U.S. at 284, 109 S.Ct. 2463).

#### a. Johnson Factors

■ The parties are at great odds in terms of setting a reasonable hourly rate: Luessenhop seeks $260 per hour, which would establish a new rate for this District, while Clinton County argues that should we find Luessenhop to be a prevail-

ing party, the rate should not exceed $210 per hour. In support of her Fee Petition for the hourly rate of $260, Luessenhop submits an Affidavit, her Attorney's Affidavit and Supplemental Affidavit, an Economist Report, and five other Attorney Affidavits or Affirmations, one of which conducted a survey of practicing attorneys in the Albany area. *See supra* note 1. In light of the fact that Luessenhop is seeking to set a new district wide rate rather than "settle" for what has been the normal district rate of $210, we must review her attorney's submissions within the framework of the other *Johnson* factors. Those twelve Johnson factors are

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens*, 493 F.3d at 114 n. 3 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)).

Attorney Schneider has been practicing law since 1981 and has practiced in the Second and Fifth Circuits. He has been practicing civil rights law since 1982 and has an active practice in the northern part of this District. This Court is familiar with Schneider's practice within this District and further knows that has brought several cases that have reached conclusion, either by dispositive motion or trial, while others remain outstanding. Within the past seven years, he has argued at least seven appeals before the Second Circuit. We also accept the fact that Schneider is one of very few attorneys in the northern region of the this District who prosecutes civil rights actions, particularly when the case involves real estate foreclosures. He has the requisite skills to engage in such litigation. *See generally* Dkt. No. 77–2, Schneider's Affirm.

We further note that Schneider has had a long relationship with Luessenhop since approximately 2001, when he represented her on these very issues in New York state courts and then to conclusion in our Court. Although we initially did not agree with Luessenhop's assessment on the law as it related to the facts of her case thereby causing her to appeal to the Second Circuit, overall, we do not find the case to be classified as "undesirable." As a point of reference, it appears that Schneider has established a cottage industry on due process challenges within the foreclosure process, at least in Clinton County, so this issue is neither novel, nor difficult, nor undesirable to Schneider. Since craving out a niche as to these types of cases, accepting this case would only further his practice in this arena. Furthermore, in terms of the nature of the various and complex legal actions pursued in this District on a daily basis, this case did not present truly novel nor arduous questions. Although Schneider avers that he was "precluded from performing other legal work because of [his] work on this case," Dkt. No. 77–2 at ¶ 14, we do not accept this as being true. In fact, his activities within the District during the relevant time period belie that asseveration. In reviewing the District's records, we have confirmed that since 2004, the year when the Complaint in this matter was filed, Schneider has commenced approximately

110 other matters within this District, albeit the majority of which have been social security disability appeals.[10] Furthermore, we have reviewed Schneider's time sheets, which clearly indicate that he represented various clients concurrently with his representation of Luessenhop. *See infra* Part II.B. Considering what has been revealed to us, there was no specific time restraints imposed upon Schneider either by client, the Court, or the circumstances of the case. *See generally* Dkt. No. 77–2.

In prosecuting this Fee Petition, Schneider did not share with us his customary hourly rate as he is required to do, leaving us to ponder whether Schneider has an established billing rate. He has admitted however that when representing Luessenhop on her state action, he charged her $150 an hour. *See also* Dkt. No. 77–6, Elizabeth Luessenhop's Aff., dated Oct. 29, 2007, at ¶ 4. But, in reference to this federal case, Schneider accepted the case on a contingency fee basis. Dkt. No. 77–2. In terms of recent counsel fee awards extended to Schneider, in *Farbotko* there were two fee awards. The first fee award occurred in 2003 and Schneider received the hourly rate of $175. In 2005, after the Second Circuit addressed substantive issues and remanded the case back to the district court, Schneider sought $200 per hour for work performed in the District Court, an hourly rate of $250 for the appeal and an upward enhancement. *Farbotko v. Clinton County*,

433 F.3d at 206. When this later fee application was considered by the Honorable David R. Homer, United States Magistrate Judge, Schneider was, once again, awarded an hourly rate of $175. This award of attorney fees was successfully challenged on appeal and remanded for further review primarily because Judge Homer's decision failed to mention or discuss Schneider's evidence on the prevailing market rate and may have relied too heavily upon previous court determined rates. *Id.* at 207 & 210–11. Upon remand, the parties filed a succinct status report merely advising Judge Homer that the attorney fee issue was settled, without providing any details. *Farbotko v. Clinton County*, 99–cv–1946, Dkt. No. 191, Status Report, dated Jan. 31, 2006.[11] Schneider has not shared with us that compromised attorney fee. In a recent contested bankruptcy case of Andrew T. Gregoire, the Honorable Robert Littlefield, United States Bankruptcy Judge, granted Schneider an hourly rate of $200. Dkt. No. 79–4, Bankruptcy Court MDO, at p. 10 n. 6. Lastly, the *Johnson* opinions require courts to weigh the time and labor that is required. That analysis is below. *See supra* Part II.B.

### b. Calculation of the Hourly Rate

 Clinton County has substantial support for its argument that the hourly rate should be $210. Our survey of attorney fee awards within this District for the past year confirms that, in the vast majori-

---

**10.** We know through personal observations that Attorney Schneider has a very active law practice that specializes in social security disability cases. Since 2004, approximately 100 social security appeals have been filed by him. Moreover, there were countless other social security cases pending during this same duration. We also estimate that approximately ten other plenary actions have been filed by this attorney within this District. *See e.g., Tupaz v. Clinton County, et al.,* Case No. 05–cv–606 (filed 5/18/05); *Bouchard v. Clinton County, et al.,* Case No. 06–cv–418 (filed

4/3/06); *Miner v. Clinton County, et al.,* Case No. 06–cv–728 (filed on 6/12/06); *Brunnell v. Clinton County, et al.,* Case No. 07–cv–864 (filed 8/24/07). Anecdotally, we know that Schneider has accepted occasional criminal case assignments from this Court. We are uncertain what matters he may or may not have pursued in state courts or other districts.

**11.** When this Status Report was filed, the general prevailing rate in this District was $210 per hour.

ty of cases, the amount has been $210.[12] There are two other reported cases within this District where the Judges set the hourly rates at $225 and $250, based upon a finding that each case was unique.[13] But our analysis of reasonable hourly rate does not stop at this juncture. We must remain mindful that the Second Circuit directs us to consider the evidence adduced by the applicant and our own familiarity and experience with prevailing rates within the district.

In support of the Fee Petition, Luessenhop submits a Survey and Attorney Affidavits indicating a wide range of billing rates from a low of $175 to a high of $350 within this District. *See* Dkt. Nos. 77–3 to 77–10. Since Schneider practices

in the "North Country" where civil right actions are infrequent, he has retained the service of Attorney Mark S. Mishler, an Albany lawyer, to conduct a survey on his behalf, presumably in order to determine a district wide prevailing market rate. Ostensibly, the overall billing rates in the northern region of the District are more depressed than in Syracuse, Albany, and Binghamton, which are litigation centers within the District. Attorney Mishler interviewed thirteen lawyers who practice in various sized firms with various types of litigation practices. Dkt. No. 77–3. Most of those rates reported to Mishler have a median value of approximately $260. *Id.*[14] It is these billing rates that Luessenhop most relies upon in her application. Even

---

12. Our survey of reported cases within the Northern District of New York wherein attorney's fees where affixed are listed as follows: *Paramount Pictures Corp. v. Hopkins*, 2008 WL 314541, at *5 (N.D.N.Y. Feb.4, 2008); *Int'l Bhd. of Elec. Workers Local Union No. 1249 Pension and Ins. Funds v. Phoenix Signal and Elec. Corp.*, 2008 WL 89516, at *5 (N.D.N.Y. Jan.4, 2008) (citing to *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 419 F.Supp.2d 206, 211 (N.D.N.Y.2005) & *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 121 (2d Cir.2007)); *Rahiym-Amir v. Bellamy of Corinth, Inc.*, 2007 WL 4573409, at *5 (N.D.N.Y. Dec.26, 2007); *New Paltz Cent. Sch. Dist. v. St. Pierre*, 2007 WL 655603, at *2 (N.D.N.Y. Feb.26, 2007); *J.S. v. Crown Point Cent. Sch. Dist.*, 2007 WL 475418, at *5 (N.D.N.Y. Feb.9, 2007) (the parties sought $250 and 260; the court held to $210); *Oswego Laborers' Local 214 Pension & Annuity Funds v. Buckskin Pipeline Constr. Ltd.*, 2007 WL 2693565 (N.D.N.Y. Sept.10, 2007); *Sony Pictures Home Entmt. Inc. v. Chetney*, 2007 WL 655772 (N.D.N.Y. Feb.26, 2007); *Lake v. Schoharie County Comm'r of Soc. Serv.*, 2006 WL 1891141, at *6 (N.D.N.Y. May 16, 2006).

13. Our survey also indicates the Honorable Lawrence E. Kahn, United States Senior District Judge, awarded Paul DerOhannesian, Esq., who sought $275 per hour, an hourly

rate of $225 in a complicated election law case. Judge Khan found DerOhassian's practice in this field of law to be "unique." *Hoblock v. Albany County Bd. of Elections*, 2006 WL 3248402 (N.D.N.Y. Nov.7, 2006). Also, in a very complicated civil rights action involving the Omnibus Crime Act, the Honorable David R. Peebles, United States Magistrate Judge, awarded Edward Menkin, Esq., an hourly rate of $250. Attorney Menkin sought an hourly rate of $300. *Doe v. Kaiser*, 2007 WL 2027824, at *10 (N.D.N.Y. July 9, 2007) ("[B]ased upon my knowledge of billing rates customarily charged ... within this district ... [and] the **level of experience of the plaintiff's attorney,** [300 is not acceptable] but an hourly rate of $250 is justified as representing that which a reasonably prudent client would be willing to pay for services of the type rendered .... considering the nature of the action, the services rendered, the result achieved and there was no objection by defendant.") (emphasis added). We further spoke with Judge Peebles who confirmed that he was not setting a new prevailing rate for the entire District but only awarded Menkin this rate because of his superior ability and reputation, his near four decades of accomplishment, the fundamental difficulty and uniqueness of the case, and the exceptional and maybe unexpected result.

14. Attorney Mishler interviewed thirteen attorneys. In determining Albany attorneys'

though some of the attorneys expressed surprise that an experienced lawyer would handle a complex federal case for under $300 per hour, *id.* at ¶ 10, what is lacking from Mishler's Affirmation, and probably because it was neither asked nor deeply probed, is whether these attorneys are billing all of their clients at these rates, or only their best paying, corporate-like clients. Also absent from this Affirmation is the realistic notion of whether these attorneys are actually collecting these rates from their lower level paying clients and the prospect of discounts. In this discussion, however, Mishler, who is a seasoned civil rights practitioner, critically appraised this information that he culled from litigators by extrapolating further that

> [d]ue to the fact that most potential civil rights plaintiffs do not have the resources to pay legal fees while their case is pending, I am not sure there can truly be a "market rate" for plaintiffs' attorneys in civil rights cases, if "market rate" means the rate clients actually pay their lawyers to handle these types of cases. This is why my survey included some attorneys who handle plaintiff-side civil rights cases as well as some who handle other types of federal civil litigation.

*Id.* at ¶ 17.

In addition to these Attorneys' Affidavits or Affirmations and survey, at least in

terms of § 1983 actions, Luessenhop interjects a novel methodology to calculate a reasonable hourly rate for this community by hiring the service of an economist, Arthur Woolf, Ph.D., to perform an analysis entitled "Analysis of Civil Rights Lawyer Market and Costs." Dkt. No. 77–4 & 5. Dr. Woolf's rudimentary approach in determining what should be the reasonable hourly rate for this District was to take the rate of $175, which was first set in 1992, and multiple that rate by the annual Employment Cost Index (ECI) for each of the past fourteen years thereby arriving at an equivalent rate of $287.33 for 2006.[15] Although this is an interesting concept, this Court rejects this methodology for a host of reasons.

Even Dr. Woolf recognizes the dilemma in calculating a reasonable hourly rate for attorneys. In fact, in one of the paramount sections of his report, "Market for Civil Rights Attorneys," Dr. Woolf, who had to rely upon Schneider and another attorney's Affirmation to supplement the underlying facts and enhance his appreciation of the complexity of this discourse, reveals all of the difficulties and variables in calculating a prevailing rate. Some of those salient factors are the level of legal experience, what a client is willing to pay or is able to pay, and the risk and uncertainties of the litigation itself, all of which

---

billing rates, his survey reveals the following: 1 attorney at a variable rate of $300 to 350, 1 attorney at $325, 4 attorneys at variable rates approximately $300, 1 attorney at $285, 1 attorney at $250, 3 attorneys at $225, 1 attorney at $200, and 1 attorney at $175.

**15.** In *Farbotko v. Clinton County of New York*, Schneider attempted to present to the Second Circuit a similar calculation by using the Consumer Price Index (CPI) rather than the Employment Cost Index (ECI) to arrive at the base buying power of $235.62 for 2004. Since this methodology was not presented to

the district court at the time the rate was initially set, the Second Circuit did not endorse this method to calculate hourly rates but rather stated, *in dicta,* that Schneider "would not be bar[red] ... from doing so on remand." 433 F.3d at 210 n. 10.

Here, however, Dr. Woolf concludes that CPI "is not the appropriate metric to use [since] ... CPI measures the cost of market basket of goods and services [and][i]t does not measure the increase in wages or compensation to employees in the economy." Dkt. No. 77–4 at p. 3.

cannot be measured on an economist's slide rule. *Id.* at p. 2. Since this is a "thin market," "one in which there are few buyers or sellers and hence there is no market clearing price for the good or service in question," an economist cannot persuasively resort to his normal tools to arrive at prevailing rate for this District. One critical factor that Dr. Woolf and the index methodology cannot critically evaluate is the steep competition for fee paying clients within the legal profession. More significantly, the primary flaw of the ECI index methodology is the base number provided by Schneider upon which Dr. Woolf starts his calculation. Schneider, and now Dr. Wolf, incorrectly believe that compensation forces for lawyers cannot remain static for extended periods of time. By using the ECI annually for the past fourteen years, their methodology accepts the proposition that lawyer's fees increase exponentially and uniformly. Whereas, experience has shown us that these rates can evolve rather slowly or increase by leaps and bounds based upon larger economic forces. As a critical example, the prevailing rate within this District had been $175 per hour as late as 2005, without any complaints or objection. *See e.g., Coppola v. Bear Stearns & Co., Inc.,* 2005 WL 3159600, at *4 (N.D.N.Y. Nov.16, 2005); *DiSorbo v. City of Schenectady,* 2004 WL 115009, at *2 (N.D.N.Y. Jan.9, 2004); *Gatti v. Cmty.*

*Action Agency of Greene County,* 263 F.Supp.2d 496, 515 (N.D.N.Y.2003); *aff'd,* 86 Fed.Appx. 478 (2d Cir.2004).[16] If this fact is accepted, then we cannot consider factoring an annual ECI until approximately 2001 or 2003, to be generous to the Applicant. Under these circumstances, the annual value would certainly not reach $287 per hour. Additionally, Woolf admits that the ECI does not have a specific category for attorneys and thus he lumps attorneys in with a general "service-providing white-collar occupations." Dkt. No. 77–4 at p. 3. Such categorization portrays the fallibility of this methodology.

With the exception of EAJA cases and the policies of the District Court for the District of Columbia, no other court, including the Supreme Court, the Second Circuit, or any other Circuit, has adopted, endorsed, or prescribed a methodology calculating reasonable hourly rates by utilizing either the CPI or ECI for purposes of awarding fees pursuant to § 1988.[17]

The EAJA applies specifically to litigation against the United States Government and has precise provisions as to awards of attorney fees and costs when a plaintiff prevails. 28 U.S.C. § 2412; *see supra* Part II.A. Under the EAJA statutory scheme, the rate for attorneys is fixed at $125 per hour. But, in deciding an award

16. The Court is personally familiar with the facts in two of these cited cases. In *Coppola v. Bear Stearns & Co.,* the recipient of attorneys' fees is the largest firm in Albany, with probably has the highest billing rate in the region. 2005 WL 3159600. Both parties in *Coppola* agreed that the hourly rate would be $175. *Id.* at *4 n. 8. In *Gatti v. Community Action Agency of Greene County,* the four partners of a highly skilled and recognized civil rights firm from Utica, which is located within this District, had a billing hourly rate of $175. 263 F.Supp.2d at 515. Moreover, Attorney Schneider, without complaint or appeal, received the rate of $175 in 2003. *Far-*

*botko v. Clinton County et al.,* 99–CV–1946, Dkt. No. 171.

17. For more than twenty years, District of Columbia courts have traditionally applied the "so called *Laffey* Matrix," which employs the CPI to calculate hourly rate. *Smith v. District of Columbia,* 466 F.Supp.2d 151, 156 (D.D.C.2006) (citing *Laffey v. Northwest Airlines,* 572 F.Supp. 354 (D.D.C.), *aff'd in part and rev'd in part on other grounds,* 746 F.2d 4 (D.C.Cir.1984)); *see also Ricks v. Barnes,* 2007 WL 956940, at *5 n. 3 (D.D.C. Mar.28, 2007). We have found no other circuit endorsing the *Laffey* Matrix.

of attorney fees, a court has the discretion to increase the statutory rate by factoring in the cost of living. 28 U.S.C. § 2412(d)(2)(A)(ii).[18] Even within this Circuit and this District, when deciding attorney fees pursuant to EAJA, the courts have weighed the cost of living factor. *See Kerin v. United States Postal Serv.*, 218 F.3d 185 (2d Cir.2000); *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir.1992) (a social security disability case wherein the Second Circuit determined that the cost of living should be given its ordinary everyday meaning); *Martin v. Sec'y of The Army*, 463 F.Supp.2d 287, 291–92 (N.D.N.Y.2006) (finding that the EAJA's cost of living factor was not warranted). Yet, neither Congress nor the Supreme Court nor the Second Circuit have extended the EAJA statutory provisions in awarding attorney fees within the context of a § 1983 or Title VII or any other civil rights type of case. Congress could have but did not place a similar cost of living equation or any statutory cap in determining reasonable attorney fees under § 1988. Similarly, both the Supreme Court and the Second Circuit have been keenly aware for some time of the EAJA and its mechanism for calculating reasonable fees, and still neither have ever proposed that a court should contemplate a cost of living analysis when calculating hourly rates in civil rights cases. Schneider intimates that the Second Circuit considered such an analysis in *Farbotko*. When the Second Circuit remanded

*Farbotko* for further consideration, it only stated, *in dicta*, that plaintiff was not barred from presenting the argument to the district court. The implication that the Circuit may have embraced the cost of living factor (CPI) is a misreading of that permission. *Farbotko*, 433 F.3d at 210 n. 10. For these reasons, this Court is not persuaded to use a cost of living index method to calculate a reasonable hourly rate.

In this process of determining the prevailing rate, a court can and should consider its experiences and familiarity with the prevailing rates employed in the District. *Arbor Hill*, 493 F.3d at 117–18. This Court has attempted to remain attuned to such prevailing rates within this District. In addition to independent discussions with attorneys about the practice of law and billable rates, over the past three years, this Court has conducted two surveys, the most recent for this case. Similar to Mishler's survey, this Court interviewed approximately a dozen attorneys in the Albany area, all of whom this Court knows to be experienced civil rights practitioners. Collectively, these attorneys advise this Court that there is a wide range of rates available to a reasonable paying client. Those hourly rates range from $175 to $300.[19] Upon further inquiry by the Court, several attorneys admitted that their rate was set for their best paying clients and occasionally they had to discount their bills for their least resourceful

---

18. In terms of awarding attorney fees, the EAJA states in pertinent part,
 attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee[.] 28 U.S.C.A. § 2412(d)(2)(A)(ii).

19. The Court's survey reflects the following: 1 attorney at $175, 1 attorney with a variable rate depending on the client from $190 to $250, 4 attorneys at $200, 1 attorney at $210, 2 attorneys with variable rates depending on the client from $225 to $250, 1 attorney at $275, 1 attorney at $285, and 2 attorneys at $300. Our survey's approximate average is $249 whereas Luessenhop's survey of attorney fees has an approximate average of $262. But averages may not serve as the best barometers as to what a reasonable paying client would be willing to bear.

clients. How often and to what degree the discounts occur defies calculation because the attorneys decide those events on a client by client basis. Further, a reasonable, paying client may consider that the law firm contemplating representing them in a civil rights matter "often obtain[s] considerable non-monetary returns—in experience, reputation, or achievement of the attorney's own interests and agendas," and that contemplation has enormous impact on what may be the rate that client is willing to pay. *Arbor Hill*, 493 F.3d at 121. We cannot ignore that a reasonable, paying client "might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 118. Although we should weigh what attorneys are currently billing, based upon the vagaries just noted, we are unable to say that these are the rates the market will bear in all instances. As a further illustration, a reasonable hourly rate should not be based upon the rates that "Hughes Hubbard" would charge is corporate clients. *Id.* at 112 n. 2 (quoting *Pastre v. Weber*, 800 F.Supp. 1120, 1125 (S.D.N.Y.1991)). As the Second Circuit astutely noted, "indeed the district court (unfortunately) bears the burden of **disciplining the market,** stepping into the shoes of the reasonable, paying client, who

wishes to pay the least amount necessary to litigate the case effectively." *Id.* at 112 (emphasis added).

Plaintiff argues that we should consider the hourly rates that have been set within other district courts. *Arbor Hill* settles this argument by requiring that the hourly rate be calculated on what a reasonable client in the relevant geographical area would pay, for the very obvious reason the client in most instances would hire an attorney within the district or an attorney whose rates were "consistent with those charged locally." *Id.* at 119. Hence, we will not follow Plaintiff's importune.[20]

■ Defendant argues that if we are to determine the hourly rate on case specific basis and what is the least amount a reasonable, paying client would pay, we need not look any further than the facts and circumstances in this case and the hourly rate charged to Luessenhop on the companion state action. *Lake v. Schoharie County Comm'r of Soc. Serv.*, 2006 WL 1891141 (N.D.N.Y. May 16, 2006) (the process contemplates a case specific inquiry). That amount was $150 per hour. Dkt. No. 77-6, Luessenhop's Aff. at ¶ 4.[21] Although the argument is palatable, if we were to impose this rate, it would have a confusing and deleterious impact upon the establish-

20. Luessenhop argues that we should consider rates from the Southern District of New York. Ruminating on conversations with other regional lawyers and judges over the past year or so, it appears to all that the Southern and Eastern District of New York rates are twice those of this District.

21. A very interesting twist has occurred in reference to the fee Luessenhop paid Schneider. Luessenhop paid Schneider $3700 for assisting her on the state action. Dkt. No. 77-6 at ¶ 5. In contemplating prosecuting this matter in federal court, the parties entered into a contingency fee arrangement wherein Luessenhop paid Schneider $2000 for costs and expenses, with the expectation that

"[Schneider] would be paid by the Defendants if we won [and] if we did not win, he would not ask me to pay any more." *Id.* at ¶ 7; Dkt. No. 77-2, Schneider Aff. at ¶¶ 25–26. We therefore find Luessenhop's advocacy on behalf of Schneider receiving $260 per hour as the fair and reasonable market rate, when she was able to negotiate a previous rate of $150 per hour, peculiar. Moreover, and even more perplexing, is the revelation that Schneider has or will return $5000 of the fee Luessenhop paid and his proffer to her that he will reimburse her for any cost and fee from any fee awarded to him by this Court. Dkt. No. 77-6 at ¶¶ 9–12; Dkt. No. 77-2 at ¶ 27.

ment of the prevailing rate within the geographic market, that is the District as a whole. More persuasive, however, is the position that if Schneider, who practices in the North Country, where few if any lawyers prosecute civil rights cases, had not taken this federal case, more than likely Luessenhop would have had to seek representation in Albany or Syracuse, where the hourly rate appreciably exceeds $150 per hour. The repercussion to her then would be to pay the higher rates expected in the remainder of the District or forego prosecuting her Due Process rights, a consequence we cannot endorse. Under these circumstances, we find it prudent to apply an overall District-wide, market rate for a reasonable, paying client who is seeking to pay the least amount necessary to litigate this civil rights matter. We further note that the hourly rate of $210 recently fixed by several judges within the District, *see supra* note 13, may now, in some respect, be historical in that both Schneider's and this Court's surveys seem to reflect that attorneys within this District are billing at a higher hourly rate. *Reiter v. MTA New York City Trans. Auth.*, 457 F.3d 224, 2006 WL 2068354 (2d Cir.2006); *J.S. v. Crown Point Cent. Sch. Dist.*, 2007 WL 475418, at *5 (N.D.N.Y. Feb.9, 2007) (noting that the court should not rely exclusively on the rate structure in other cases as such is not a binding precedent). We also note that recently Judge Kahn and Judge Peebles have deviated from the hourly rate of $210 and increased the pre-

sumptive reasonable fee based upon the special circumstances in their respective cases. See supra note 13. Considering the discussion as a whole rather than piecemeal, we are persuaded that the current prevailing market hourly rate is now higher than $210. *Patterson v. Balsamico*, 440 F.3d 104, 124 (2d Cir.2006) (requiring the district court, "in addition to taking judicial notice of rates awarded in prior cases, consider [ ] evidence [from] the parties, and determine the prevailing rate within the relevant community for attorneys of comparable skill and experience performing work on comparable cases").

We also take into account that Luessenhop's empirical evidence has some credibility but this does not necessarily mean that the evidence compels the conclusion that she urges. *Brady v. Wal–Mart Stores, Inc.*, 455 F.Supp.2d 157, 207 (E.D.N.Y. 2006). Despite her urging for this Court to set the hourly rate at $260, which in her view mirrors her attorney survey, we are exhorted by the Supreme Court not to fail to appreciate that fee shifting statutes were "not designed as form of economic relief to improve the financial lot of attorneys nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (I)*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).[22] Accordingly, based upon the rates currently set by the Court, the billing rates of civil rights litigators in

---

**22.** Luessenhop argues, though not forcefully, that the Supreme Court in *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) noted or strongly suggested that a "reasonable fee under § 1988 means a fee that would have been deemed reasonable if billed to *affluent* plaintiffs by their own attorney." Dkt. No. 77–11 at p. 17 (citing *Missouri v. Jenkins*, 491 U.S. at 286, 109 S.Ct. 2463). However, and to put this in context, the Supreme Court made a parenthetical ref-

erence to Justice Rehnquist's dissent in *City of Riverside v. Rivera*, 477 U.S. 561, 591, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) as to calculating prevailing markets rates in the relevant community. No where within *Missouri* did the Supreme Court endorse this proposition, and moreover, there are no further references to it in decisions subsequent to either *Missouri* or *Rivera*. Neither has the proposition been embraced by the Second Circuit. *See Arbor Hill*, 493 F.3d at 112 n. 2.

this geographical district, and our own experiences with the hourly rate a reasonable, paying client is willing to pay, and being further mindful of the relevant factors and that the rate should be sufficient to attract competent counsel without generating a windfall, we find the reasonable hourly rate to be $235.[23]

## B. Calculating Reasonable Hours

 Now that we have calculated the reasonable hourly rate, our task is to ascertain the reasonable amount of hours that will be multiplied against the hourly rate to arrive at the reasonably presumptive fee award. Luessenhops seeks an award that will encompasses a total of 362 hours. Dkt. Nos. 77–2 at ¶ 30 & 81 at ¶ 61. The Court's responsibilities in reviewing this Fee Application is to guarantee that the hours are not excessive, redundant, or unnecessary. *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir.1998) (citation omitted). It is incumbent upon Luessenhop to provide contemporaneous time records of the work performed to support the Fee Application. *Kirsch v. Fleet Street Ltd.,* 148 F.3d 149, 173 (2d Cir.1998); *Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986). Those records should indicate the "attorney who performed the work, the date, the hours expended, and the nature of the work." *Gatti v. Cmty. Action Agency of Greene County,* 263 F.Supp.2d at 518 (quoting *New York Assn. for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983)). A typed attorney's affidavit which sets forth all of the charges may satisfy this record requirement. *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1160 (2d Cir.1994). Whether the billing information is provided by the contemporaneous time slips, attorney's affidavit, or both, the party need not show in "great detail how each minute of his time was expended," but the court should be able to glean the general subject matter of the time expenditure from the records. *Hensley v. Eckerhart,* 461 U.S. at 437 n. 12, 103 S.Ct. 1933. What is critical is that there is an adequate basis to determine the reasonableness of the claimed hours. *Lake v. Schoharie County Comm'r of Soc. Serv.,* 2006 WL 1891141, at *7 (discussing the proper way the information should be presented). Failure to provide that ade-

---

**23.** We are uncertain if Luessenhop is seeking an upward modification. Schneider avers that he is not asking for an upward adjustment. Dkt. No. 77–2 at ¶ 31. But an argument in the Memorandum of Law may seem to suggest otherwise. Luessenhop wrote that "[i]n the Second Circuit, the risk of nonpayment of counsel is another factor that can support **upward adjustment** of the reasonable amount." Dkt. No. 77–11 at p. 10 (citations omitted) (emphasis added). We will accept the averment and not consider the issue of enhancement. Nonetheless, the record before this Court, which we are intimately aware of, would not support an upward adjustment in any event. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (II),* 483 U.S. 711, 730, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("The matter may have been difficult, wearing, and time-consuming, but that kind of effort has been recognized in the lodestar award."); *Pennsylvania v. Delaware*

*Valley Citizens' Council for Clean Air (I),* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (finding that skill and experience of counsel, the quality of the representation, the result obtained are "presumably fully reflected in the lodestar amount ... and thus cannot serve as independent bases for increasing the basic fee award," and noting that "modifications are proper only in certain **rare and exceptional cases**") (emphasis added); *Blum v. Stenson,* 465 U.S. 886, 897–99, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (finding that skill and experience of the counsel and the quality of his representation should be reflected in the reasonable hourly rate and neither the complexity nor novelty of the issue should be a factor to increase the fee basis); *Hensley v. Eckerhart* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (finding upward modification appropriate when there is exceptional success).

quate basis may lead to a downward adjustment. *Amato v. City of Saratoga Springs,* 991 F.Supp. 62, 65 (N.D.N.Y. 1998).

Initially, Luessenhop only provided a detailed Affidavit to support the claim for a fee. At the Court's request, contemporaneous billing records were provided.[24] Clinton County's assailment of the records and the claimed hours is nothing short of a legal blitzkreig. Every conceivable attack upon the record keeping and the basis for claim has been mounted. Because of the sweeping and comprehensive nature of the assault, we must painfully pour through every record notation.

■ First, Clinton County charges that Schneider's billing records leave much to be desired inasmuch as they are vague and improperly employ block billing. Block billing is a prickly topic and often criticized because of the inherent complication such record keeping creates in evaluating the reasonableness of the claimed hours. Block billing is a record process which "group[s] together both compensable and non-compensable time, making it impossible to distinguish between them and determine the number of hours for which the applicant is entitled to recovery [and] ... where items ... are not segregated but instead are improperly combined with other services to be compensated at full rates." *Lake v. Schoharie County,* 2006 WL 1891141 at *7; *Sea Spray Holdings, Ltd. v. Pali Fin. Group., Inc.,* 277 F.Supp.2d 323, 326 (S.D.N.Y.2003) (finding that block billing renders the fee review difficult to determine whether and to what extent there may be duplication). The consequence of block billing, inadequate, and ambiguous records is a reduction in the hours and costs. *Gonzalez v. Bratton,* 147 F.Supp.2d 180, 213 (S.D.N.Y.2001) (noting the inherent difficulties in parsing out reasonable costs from ambiguous records); *Amato v. City of Saratoga Springs,* 991 F.Supp. at 65 (grossly inadequate and vague records warranted a cut in the fee); *In re Gregoire,* Case No. 00–11564 (Brkpty Ct. N.D.N.Y.2002) (finding Schneider's records woefully inadequate to such an extent that the records did not survive review and thus the fee was cut). But before we paint all block billing with a broad brush, the Court must appreciate the practicalities of conducting a law practice and the maintenance of these types of records. Our inquiry should not be about perfection but the reasonableness of the claim. *Smith v. Dist. of Columbia,* 466 F.Supp.2d 151, 158 (D.D.C.2006).

Clinton County wants us to significantly reduce Luessenhop's hours spent in pretrial litigation. Clinton County hones in on those hours spent on preparing motions

24. These contemporaneous billing records were forwarded to the Court for an *in camera* review. It appears that Schneider does not complete individual billing slips for each hour he works on a particular file as do most law firms. Rather, he employs a daily log sheets in which he lists the time he expends on a particular file or files. By doing so, other clients' billing information are reflected along with Luessenhop's. To redact other clients' information would be an arduous, ridiculous, and fruitless process. Further, because of other clients' sensitive information and the poor legibility of these records, we will not direct that these records be shared with the County. They would truly have dubious benefit for the County anyway. Nonetheless, we have compared the notations on these daily sheets with Schneider's Affidavit. Lastly, Schneider seeks an additional 1.2 hours for providing these copies to the Court. This Court will not honor this request in that these records should have been made available at the time the Motion was filed and the effort to copy these records appears to us to be a duplication of the effort of listing his hours. Completion of the Affidavit and copying of the records could have been made concurrently to minimize the cost.

or oppositions thereto on issues before this Court such as qualified immunity, punitive damages, summary judgment, all of which Luessenhop lost. Dkt. No. 79 at ¶¶ 27–28. We reiterate our earlier finding that, notwithstanding Luessenhop's failure to succeed on her Cross Motion for Summary Judgment and other motions subsequent to the Second Circuit Mandate and Remand, she is the prevailing party and the award of attorney's fees should not be reduced because of the County's belief that Luessenhop was not completely successful. *See supra* Part II.A.1. This request will be denied. Similarly, Clinton County wants us to reduce the hours devoted to research on discovery demands used in "the pursuit of a meritless early discovery motion," those hours devoted to supplemental submissions, and her research in support of her Bill of Cost before the Second Circuit. Dkt. No. 79 at ¶¶ 29–31. Acknowledging that Luessenhop did not win every legal skirmish, we cannot ignore that she still eventually prevailed on the common core facts that permeated every discussion and every point litigated. Likewise, this request will be denied.

■ The next matter is the County's challenges to Luessenhop's hours in pursuit of her Appeal to the Second Circuit. First, all agree that the lodestar rate for appeals shouldn't be any different from all other levels of the litigation. *Farbotko*, 433 F.3d at 212. But the County reminds us that Luessenhop's Appeal was consolidated with two other cases handled by Schneider, *Bouchard* and *Tupaz* against Clinton County and others. *Luessenhop v. Clinton County*, 466 F.3d 259 (2d Cir. 2006). In reference to Bouchard, the parties had partially settled the case before oral arguments, *id.* at 264, and after the appeal, the parties settled all other issues including the award of attorney's fees, Dkt. No. 79 at ¶ 32. As to Tupaz, the matter had

also been remanded and presently is before the Honorable Thomas J. McAvoy, United States Senior District Judge. The County contends that if Tupaz is successful, more than likely there would be a fee award then. Based upon these facts, it is asserted that Schneider "would essentially obtain a 'triple recovery,' " and accordingly the County asks us to reduce the appellate hours by "one-third." *Id.* We are persuaded that there is a strong likelihood that the hours spent and recorded for the Luessenhop Appeal are also applicable to, or even duplicative of, Schneider's efforts on behalf of Bouchard and Tupaz. Additionally, the prospect of a triple recovery through this Application appears veritable. In many respects, this is a scenario analogous to Schneider's limited success in Farbotko where the district court reduced the number of hours claimed by 40% based upon the further recognition that the different claims overlapped only as to the legal issues and not the facts. 433 F.3d at 207 n. 5. A total of 88 hours has been identified with preparing, drafting, submitting, and arguing the appeals on behalf of Luessenhop, Bouchard, and Tupaz. Consequently, these hours shall be reduced by one-third, or 29 hours.

Next, the County interposes a boilersuit argument that many hours expended on behalf of Luessenhop were excessive, redundant, or otherwise unnecessary, in light of Schneider's claimed experience with federal litigation, with the focus seemingly directed at specific areas of pretrial litigation. Succinctly, the discrete areas of this litigation being challenged as excessive and redundant are: (1) reviewing and drafting of complaint (4 hrs.); (2) discovery research and preparation (13.5 hrs.); (3) devotion to the Cross Motion for Summary Judgment and Opposition to Defendant's Motion (91.5 hrs.); (4) research and preparation of the Appeal (16.5 hrs.); (5) hours reviewing Respondent's Appellate

Brief (13.5 hrs.); (6) devotion to Tax Exemption Act before the Second Circuit (21.5 hrs.); (7) preparation for Second Circuit argument (28 hrs.); (8) research and preparation of motion regarding qualified immunity and damages (18 hrs.); and (9) research, investigation, and preparation of Attorney Fee Petition (52 hrs.). Dkt. No. 79 at ¶ 33.

In order to determine the reasonableness of the time consumed in each of the projects identified above, we are required to review, once again, to the extent possible, those Motions and pleadings to assist us in assessing their qualitative and quantitative input and value. With that review placing us in a better posture to determine reasonableness, we find the following hours expended in this matter are reasonable: (1) researching and drafting of the Complaint (4 hrs.); (2) research and draft of a discovery motion (13.5 hrs.); and (3) some of the research and preparation for all aspects of the Appeal (69.5 hrs.). As to the Appeal, we find the time to review Respondent's Brief and to prepare for oral argument to be excessive. Accordingly, we will reduce them collectively by ten (10) hours.

We are inclined to agree with the County that employing 91.5 hours for opposing and submitting a cross motion, on its face, appears excessive. We initially gave pause to our inclination because Luessenhop submitted a forty-one page Memorandum of Law erupting with legal citations from every corner of the globe and at both state and federal court levels. This unabridged discourse tended to support the appearance of a necessary, albeit gargantuan effort to confront the issues presented in both Summary Judgment motions. Still, we find that it should not take a seasoned litigator of Schneider's abilities on the topics at hand, to which he is very familiar, more than two weeks to research, compile

and submit a cross motion. If our review was based solely upon actual hours rather than a determination of whether the time spent was reasonable and necessary, we would not be performing this very exercise. Thus, we will reduce the time spent on this Motion by 20 hours. Likewise, Luessenhop, in opposing a subsequent Motion to Dismiss in which qualified immunity and punitive damages were the crux of the debate, submitted a Memorandum of Law rippling with a plethora of citations from a very wide swath of federal and state courts. It appears to have the indicia of considerable research. Yet, considering that the Second Circuit has spoken so definitively and eloquently on both issues, it does provoke a query as to whether all of this research was necessary. In the final analysis, we cannot gainsay that all of this time was unnecessary, so we tip the scale in favor of Luessenhop and determine that the time consumed in researching and drafting for this motion was reasonable.

■ However, we agree that the 52 hours expended to research and prepare this Motion for Attorney fees is unreasonable. We know from looking at other case dockets in which Schneider was counsel that this investment in time for this Fee Application is excessive. We have compared Luessenhop's Memorandum of Law with the Farbotko's Memorandum of Law. See Farbotko, Case No. 99–CV–1946, Dkt. No. 160. In Farbotko, the memorandum of law is nearly two-thirds the length of Luessenhop's Memorandum but Schneider sought only fifteen hours for the research and draft. Schneider also had previous discussions with some of the same attorneys who submitted affidavits and the economist in this case. In addition, Schneider adopted nearly verbatim at least five pages of text for Luessenhop's Memorandum, so this Memorandum was not

drafted from "whole cloth." These replications notwithstanding, we further find the multitude of citations and effort to unearth them unnecessary in light of the Second Circuit's comprehensive decision and sage guidance in *Arbor Hill*, 493 F.3d 110. Additionally, Luessenhop seeks an additional 9.9 hours for the Reply Affidavit in Support of the Motion for Attorney Fees. Dkt. No. 81. We find a significant portion of the Reply Affidavit to be a rehash of Plaintiff's initial Application and what new arguments and facts presented, we submit, could have been completed in half the time. Viewing both the Motion and the Reply, Luessenhop is asking for 62 hours for this Fee Petition. In reviewing fee application litigation and the struggle to determine what may be reasonable, we are persuaded by the reasoning in *Brady v. Wal–Mart Stores, Inc.*:

> I would be remiss if [I] did not trim some of the fat from [the] fee application in light of the clear excessiveness of the billing for its preparations. I will reduce by half the lodestar hours for this task. *See Murray v. Mills*, 354 F.Supp.2d 231, 241 (E.D.N.Y.2005) (citations omitted) (noting that even in a complex case a fee application should only tax 30 hours); *Levy v. Powell*, 2005 WL 1719972, at *8 (E.D.N.Y. July 22, 2005) (justifying an across-the-board 35% percent reduction in part on the 101.3 hours billed for the fee application).

455 F.Supp.2d 157, 212 (E.D.N.Y.2006).

Hence, we will reduce these hours expended on the Fee Petition to 30. Further, in reviewing the time slips and corresponding Affidavit, there were several entries which were very vague. Thus we will reduce those entries by four hours.[25] In a case of this nature, size, and complexity, we find the total of 268 hours to be reasonable. *See Murray v. Mills*, 354 F.Supp.2d at 241 (survey of cases on reasonable amount of hours).

## C. Calculating Expenses

██ Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recoup reasonable costs incurred in prosecuting the litigation. Reasonable identifiable out of pocket disbursements which are ordinarily charged to clients are recoverable. *United States Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir.1989); *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933–34 (2d Cir.1987) (providing a non-exclusive list of recoverable costs including but not limited to photocopying, travel, telephone costs, postage, filing fees and the like); *Vacco v. Rac Holding, Inc.*, 135 F.Supp.2d 359, 366 (N.D.N.Y.2001). However, a party is not entitled to recover those costs associated with "routine office overhead." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998); *see e.g., United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp*, 95 F.3d 153, 173 (2d Cir.1996) (computerized research expenses are recoverable as part of attorney's fees rather than as costs); *Doe v. Kaiser*, 2007 WL 2027824, at * 10 (N.D.N.Y. July 9, 2007) (same).

██ The itemization of recoverable expenses in this case is not peculiarly extensive nor controversial. The cost of travel is allowable. Here, Luessenhop seeks half

---

**25.** Clinton County wants us to reduce some of the attorney's time, approximately 8.1 hours, because they were devoted to clerical and secretarial responsibilities rather entirely legal. Dkt. No. 79 at ¶ 36. We appreciate that Schneider is a small town practitioner and maybe a solo practitioner who has to assume responsibilities that may be categorized as clerical or secretarial. The hours reported as possibly clerical are minimal and frequently performed by attorneys. We are not persuaded by Clinton County that we should reject these hours.

the reasonable hourly rate for 15 hours. *Cruz v. Local Union No. 3 of Int'l Bhd. of Electric. Workers,* 34 F.3d at 1161 (citing *Jennette v. City of New York,* 800 F.Supp. 1165, 1170 (S.D.N.Y.1992) (travel at 50% of hourly rate)). In order to be present for oral argument on her Appeal before the Second Circuit, we accept that the distance between Plattsburgh to New York City is significant and travel between the two to be especially time consuming. Accordingly, we will reimburse Luessenhop the sum of $1,762.50 for travel. As to other related costs, such as liability expert fee, appeal expenses, and other filing fees, exclusive of those expenses incurred for the Fee Petition, those costs are neither curious nor controverted; hence we award Luessenhop the sum of $2,828.28 for these items.

▮ Attorney Mishler's fee for the attorney fee survey and Dr. Woolf's economic report are more anomalous and do not lend themselves to prompt determination. It is a matter of first impression that a fee applicant would hire another attorney to conduct a survey on her behalf. We cannot forget that Luessenhop has the burden of proving that her Fee Application is based upon prevailing market rates and that she has the right to present evidence to support the rate she believes to be prevailing. Here, where we are required to weigh the presumptive prevailing market rate district wide, further pondering the geographical distance and economic disparities between the Plattsburgh and Albany communities and Schneider's relatively limited access to those attorneys who practice civil rights litigation in Albany, we acknowledge that Luessenhop was left with little option but to hire Mishler, an Albany attorney, to conduct a more comprehensive survey on her behalf. Luessenhop seeks $787.50 for Mishler's endeavors, which appears to be modest. Considering the amount of time this Court spent to conduct a similar survey, we do not find this amount to be unreasonable and will award it.

We are not so readily disposed to sanction the full fee for Dr. Woolf's Report however. As we noted above, Attorney Schneider has adopted similar strategies from the *Farbotko* case in seeking attorney's fees for this case. Our further investigation of these strategies used in *Farbotko* reveals that Schneider employed Dr. Woolf and his theory of measuring attorney's fees with the CPI. *See,* 433 F.3d 204, 210 n. 10. Therefore, neither Dr. Woolf nor Attorney Schneider re-invented the methodology nor the underlying factual premises for this case. The only difference that we can surmise is that in *Farbotko* the team used the CPI, and here they decided to use the ECI. *See id.* & Dkt. No. 77–5, Woolf Report. The distinction between the CPI and ECI is lost on both this Court and Schneider. *See* Dkt. No. 77–2 (based upon "Consumer Price Index").[26] Without a comparison of the two reports, we are unwilling to say that this professional corroboration adopted the *Farbotko* report in its entirety and only added some specific refinement to our report, so we will not materially limit this cost based upon this factor. Nor are we willing to reject the expense outright because we did not find it persuasive or helpful in assessing the reasonable hourly rate. But we were not provided with any other cost centers, such as the hourly rate and time expended, to determine if $900 is reasonable for such an endeavor, notwithstanding

**26.** We also submit that it is a certain unreliable factor for Woolf as well. Not less than three years ago, in the *Farbotko* case, Woolf submitted a report stating that the prevailing rate should be based upon the CPI. Now, Dr. Woolf retreats from that postulation and endorses another, "[b]ut in this case the consumer price index is not the appropriate metric to use." Dkt. No. 77–4 at p. 3.

what Schneider claims that he paid. Because of these vagaries, this Court finds, based upon its experiences with economist's billings that, a rate of $150 is reasonable and we will allow four hours for the report. Thus, we permit the sum of $600 for this report.

### III. CONCLUSION

Based upon all of the foregoing, we find that Luessenhop is the prevailing party entitled to a presumptive reasonable fee and reimbursement for litigation expenses. Luessenhop is entitled to attorney's fees in the amount of $62,980.50, and costs in the amount of $ 5,978.28. Accordingly, it is hereby

**ORDERED,** that Luessenhop's Motion for Attorney Fees, Dkt. No. 77, is **GRANTED,** and Plaintiff is awarded attorney's fees in the amount of $62,980.50, and costs in the amount of $5,978.28; and it is further

**ORDERED,** that the Clerk of the Court entered a Judgment in favor of the Plaintiff incorporating the award of attorney's fees and cost granted herein.

**IT IS SO ORDERED.**